**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTOPHER BUTLER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANCORP,<br><br>Defendant. | Case No. 0:24-cv-03700<br><br>Hon. Jeffrey M. Bryan<br><br>**DEFENDANT U.S. BANCORP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 6

II. ALLEGATIONS IN THE COMPLAINT ..... 7

III. THE COURT SHOULD DISMISS THE COMPLAINT ..... 8

A. All Of Plaintiff's Claims Should Be Dismissed Because He Does Not Allege Facts Supporting His Claims ..... 8

B. Plaintiff's Claims Should Be Dismissed For Additional, Independent Reasons ..... 11

1. Plaintiff fails to state a claim under the ECPA ..... 11

2. Plaintiff's invasion of privacy claim should be dismissed ..... 14

3. Plaintiff's implied contract claim should be dismissed ..... 16

4. Plaintiff's unjust enrichment claim should be dismissed ..... 17

C. Plaintiff's Allegations That U.S. Bank Violated The Gramm-Leach-Bliley Act Are Irrelevant, And Also Wrong ..... 19

IV. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 8, 17

*B.K. v. Eisenhower Medical Center*
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 10, 17

*Banga v. Equifax Info. Servs. LLC*
No. 14-CV-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) ........ 14

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) ........ 8, 9

*Brooks v. Roy*
776 F.3d 957 (8th Cir. 2015) ........ 10

*Caldas v. Affordable Granite & Stone, Inc.*
820 N.W.2d 826 (Minn. 2012) ........ 18

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 9, 10

*Dunmire v. Morgan Stanley DW, Inc.*
475 F.3d 956 (8th Cir. 2007) ........ 19

*In re Facebook Internet Tracking Litig.*
140 F. Supp. 3d 922 (N.D. Cal. 2015) ........ 13

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 15

*In re Google Inc.*
806 F.3d 125 (3d Cir. 2015) ........ 12

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*
750 F.3d 1098 (9th Cir. 2014) ........ 13

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 14, 15

*Loeffler v. City of Anoka*
79 F. Supp. 3d 986 (D. Minn. 2015) ........ 14, 15

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 15

*Nienaber v. Overlake Hospital Medical Center*
No. 2:23-CV-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ........ 10, 14

*Okash v. Essentia Health*
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ........ 12, 13, 14, 20

*Planned Parenthood Fed'n of Am., Inc. v. Newman*
51 F.4th 1125 (9th Cir. 2022) ........ 11

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*
360 F. Supp. 3d 994 (N.D. Cal. 2018) ........ 16

*Schriener v. Quicken Loans, Inc.*
774 F.3d 442 (8th Cir. 2014) ........ 20

*Sepanossian v. Nat'l Ready Mix Co., Inc.*
97 Cal. App. 5th 192 (2023) ........ 18

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) ........ 10

*Sussman v. American Broadcasting Companies, Inc.*
186 F.3d 1200 (9th Cir. 1999) ........ 11

*Tri-State Bobcat, Inc. v. FINN Corp.*
338 F. Supp. 3d 971 (D. Minn. 2018) ........ 16

*Yari v. Producers Guild of Am., Inc.*
161 Cal. App. 4th 172 (2008) ........ 16

*Yoon v. Lululemon United States*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 13

Statutes and Regulations

15 U.S.C. § 6801 ........ 19

16 C.F.R. § 313.3 ........ 19

16 C.F.R. § 313.7 ........ 19

18 U.S.C. 2511(2)(d) .......... 11

18 U.S.C. § 2510(8) .......... 13

18 U.S.C. §§ 2511(a)-(d) .......... 11

Electronic Communications Privacy Act .......... passim

Gramm-Leach-Bliley Act .......... passim

Video Privacy Protection Act .......... 9

# I. INTRODUCTION

Plaintiff alleges that while applying for a credit card on Defendant U.S. Bancorp's ("U.S. Bank") website, his "personally identifiable financial information" was unlawfully disclosed to Facebook and Meta via the Meta Pixel—a website technology that U.S. Bank allegedly installed on its website. The factual allegations supporting Plaintiff's Complaint end there. Plaintiff does not allege any other details about his visit to the website, such as when he visited, the credit card he applied for, the information that was disclosed to Meta and Facebook, or even if he is a U.S. Bank accountholder.[1] Nonetheless, based on the above, Plaintiff alleges that U.S. Bank has not complied with the notice requirements of the Gramm-Leach-Bliley Act ("GLBA") and is liable for invasion of privacy, breach of implied contract, unjust enrichment, and violations of the Electronic Communications Privacy Act ("ECPA").

To start, Plaintiff's Complaint is so devoid of basic facts that the Motion should be granted on that basis alone. But beyond even that, Plaintiff's claims fail for additional reasons.

First, U.S. Bank has not violated the ECPA because the ECPA is a one-party consent statute and U.S. Bank was a party to the communications with Plaintiff. As a party to the alleged communications, U.S. Bank consented to any alleged interception

[1] Before filing this Motion, U.S. Bank's counsel asked Plaintiff's counsel to confirm whether Plaintiff was a U.S. Bank accountholder, but Plaintiff's counsel refused. Because U.S. Bank is unable to confirm whether Plaintiff is an accountholder, U.S. Bank is not moving to compel arbitration at this juncture. U.S. Bank reserves the right to move to compel arbitration at a later date if it turns out Plaintiff is an accountholder.

and disclosure of Plaintiff's personal information to Meta and Facebook. Under the law, U.S. Bank cannot be liable for violating the ECPA.

Second, Plaintiff's invasion of privacy claim fails because he does not allege facts to support a claim that he suffered an intrusion into a private area that was so beyond the pale that it shocks the conscious.

Third, Plaintiff's breach of implied contract claim fails because no implied contract exists between Plaintiff and U.S. Bank. Indeed, the very Privacy Policy that Plaintiff cites contradicts his claims.

Fourth, Plaintiff's unjust enrichment claim fails because it is contingent on his other claims.

Finally, the Complaint is littered with allegations that U.S. Bank violated the GLBA. But there is no private right of action under the GLBA, and so Plaintiff cannot assert a cause of action based on its violation. These allegations are thus irrelevant. On top of that, Plaintiff selectively ignores the portions of U.S. Bank's privacy policies that are most germane to the issue, undercutting his entire theory.

For these reasons, as further explained below, the Motion should be granted.

## II. ALLEGATIONS IN THE COMPLAINT

U.S. Bank operates www.usbank.com (the "Website") where its customers can access their account information and apply for U.S. Bank's financial products and services. (Compl. ¶¶ 3, 7.) Plaintiff alleges that he is a U.S. Bank "consumer" (unclear if he is a customer or accountholder) and that he visited the Website to apply for a credit card. (*Id.* ¶¶ 58, 60-61.) While on the Website, Plaintiff alleges that he "input personal

information into the U.S. Bank Application for the credit card product," and that this information was disclosed to third parties Meta and Facebook via the Meta Pixel. (Compl. ¶¶ 6, 62-68.) Plaintiff does not specify what information he inputted into the Website or what information in general the Meta Pixel collects from visitors to the Website. But he collectively refers to this information as "personally identifiable financial information" or "PIFI." (*Id.* ¶ 1.) Plaintiff asserts that he did not consent to U.S. Bank sharing his PIFI with Meta and Facebook. (Compl. ¶¶ 67-68.) Based on this, Plaintiff alleges that U.S. Bank has failed to comply with the GLBA, and he asserts four causes of action for (1) Invasion of Privacy, (2) Breach of Implied Contract, (3) Unjust Enrichment, and (4) Violations of the Electronic Communications Privacy Act. (*Id.* ¶¶ 54, 81-133.)[2]

## III. <u>THE COURT SHOULD DISMISS THE COMPLAINT</u>

### A. <u>All Of Plaintiff's Claims Should Be Dismissed Because He Does Not Allege Facts Supporting His Claims</u>

Plaintiff's allegations in the Complaint are too vague and generalized to support any claim for relief. To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] Plaintiff also alleges that U.S. Bank violated the Federal Trade Commissions Act, but that allegation is derivative of U.S. Bank's purported violation of the GLBA. (Compl. ¶ 57.)

The thrust of Plaintiff's Complaint is that U.S. Bank collected his PIFI and transmitted it to Meta. But Plaintiff fails to allege the basic facts necessary to support this theory. Plaintiff does not allege when he visited the Website, what pages he browsed while on the site, or even if he is a U.S. Bank accountholder. He merely alleges that he inputted "personal information" into the Website while applying for a credit card and that this information was disclosed to Meta. (Compl. ¶ 62-63.) But he does not allege what information he inputted, what information the Meta Pixel collected, or how any of the collected information constitutes PIFI. Most critically, Plaintiff never clearly defines "PIFI." Throughout the Complaint, he vaguely labels it as "customer interactions," "account information," "website activity," or "onboarding information" that U.S. Bank customers input "into U.S. Bank's website to receive financial products." (Compl. ¶¶ 5, 7, 14, 32, 43.)[3] But these "labels and conclusions" are insufficient. *See Twombly*, 550 U.S. at 555.

Indeed, courts regularly dismiss complaints where plaintiffs fail to specify what information the Meta Pixel allegedly collected about them. For example, in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), the plaintiffs alleged that while browsing the defendant's website the Meta Pixel collected their "sensitive personal and health information." *Id.* at 1121-24. The plaintiffs, however, never specified "*what* personal or health information" the Meta Pixel collected. *Id.* at 1124 (emphasis added).

---

[3] Plaintiff also confusingly alleges that the Meta Pixel collects "the video content the users request or obtain on a particular website." (Compl. ¶ 23.) But Plaintiff does not allege that he viewed a video on U.S. Bank's website; nor does he assert a violation of the Video Privacy Protection Act.

The district court dismissed the complaint because the plaintiffs' allegations were "utterly devoid of factual enhancement." *Id.* Similarly, in *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part*, No. EDCV 23-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024), the district court dismissed the plaintiffs' complaint because the plaintiffs (1) "fail[ed] to allege what, if any, medical information or medical records were transmitted or disclosed" to Meta, and (2) asserted "vague allegations about . . . their experiences" on the defendant's website. *Id.* at 1064. Finally, in *Nienaber v. Overlake Hospital Medical Center*, No. 2:23-CV-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024), the district court dismissed the plaintiff's complaint because the plaintiff did not specify "what information she entered on Defendant's Public Website" that the Meta Pixel intercepted. *Id.* at *5.

Like the plaintiffs in *Cousin, B.K.*, and *Neienaber*, Plaintiff does not specify what information the Meta Pixel collects on the Website, let alone what information the Meta Pixel collected about him. Thus, the Complaint fails to allege the "underlying facts sufficient to give fair notice" to U.S. Bank to enable it "to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011); *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015) (same). As a result, the Court should dismiss the Complaint in its entirety.

### B. Plaintiff's Claims Should Be Dismissed For Additional, Independent Reasons

#### *1. Plaintiff fails to state a claim under the ECPA*

The ECPA prohibits the intentional interception of electronic communications as well as the intentional "use" or "disclosure" of the "contents" of communications that were unlawfully intercepted. *See* 18 U.S.C. §§ 2511(a)-(d). However, a party to the communication is exempt from liability as long as the party did not intercept the communication "for the purpose of committing any criminal or tortious act." *See id.* § 2511(2)(d). Here, Plaintiff's ECPA claim fails for at least two reasons.

***First***, the party exception applies to U.S. Bank. *See* 18 U.S.C. 2511(2)(d). Plaintiff concedes that U.S. Bank was a party to the alleged communications at issue (Compl. ¶ 129), and then attempts to avoid the party-exception by asserting that U.S. Bank intercepted Plaintiff's communications "for the purpose of committing a tortious or criminal act." (*Id.* ¶¶ 127, 130.) But the crime-tort exception does not apply to U.S. Bank. To fall within the crime-tort exception, the "criminal or tortious purpose must be ***separate and independent*** from the [interception]"—meaning that the interception itself cannot establish the criminal or tortious purpose. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (emphasis added). Put another way, there must be some other crime afoot, distinct from the alleged interception itself, to invoke the ECPA exception.[4] *See Sussman v. American Broadcasting Companies, Inc.*,

---

[4] This makes perfect sense. If interception without the consent of one party were enough, standing alone, to trigger the exception, the exception would swallow the ECPA's rule that it is a one party consent statute.

186 F.3d 1200, 1203 (9th Cir. 1999) (holding that even though the defendant's recording "may well have been a tortious invasion of privacy under state law," the crime-tort exception did not apply because the defendant did not have "an illegal or tortious purpose" separate and apart from making the tape); *see also In re Google Inc.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[A]ll authority of which we are aware indicates that the criminal or tortious purpose contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interceptions' fruits.").

Here, Plaintiff alleges that U.S. Bank's tortious purpose was the invasion of his privacy. (Compl. ¶¶ 127, 130.) But Plaintiff does not allege that U.S. Bank committed an independent, secondary act—separate from the interception—that invaded his privacy. Accordingly, the crime-tort exception does not apply. Indeed, a court in this district recently encountered this exact same issue and held the crime-tort exception did not apply. In *Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024), the plaintiff asserted that the defendant violated the ECPA by using the Meta Pixel to collect his sensitive health information while browsing the defendant's website. *Id.* at *1. The plaintiff argued that that the crime-tort exception did not apply because the defendant "acted for the purpose of criminally violating HIPAA and tortiously invading [his] privacy." *Id.* at *4. The court rejected the plaintiff's argument, holding that the crime-tort exception did not apply "because neither the alleged HIPAA nor privacy violations were independent of the interception." *Id*. at *4. Rather, the plaintiff's allegations "encompass[ed] only the simultaneous interception and disclosure of

information to Meta." *Id.* So too here. The purported invasion of Plaintiff's privacy is entirely encompassed by U.S. Bank's alleged interception and disclosure of his PIFI to Meta. (Compl. ¶¶ 81-93.) Thus, the crime-tort exception does not apply. U.S. Bank is therefore exempt from liability because it was a party to the at-issue communications.

***Second***, even if the party exception does not apply, Plaintiff has failed to allege that the "contents" of his alleged communications were intercepted, used, or disclosed. The ECPA defines "contents" as "the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Put differently, "contents" refer "to the intended message conveyed by the communication." *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014). They do not include "the characteristics of the message that is generated in the course of the communication," such as personal identifiers (like a name, email, or Facebook ID) or "browser type and operating system." *Id.* at 1107-09; *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 935 (N.D. Cal. 2015); *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021). Here, as discussed above, Plaintiff has failed to allege what communications were intercepted. Thus, Plaintiff necessarily has not alleged that the contents of those communications were intercepted. At best, Plaintiff alleges that the Meta Pixel collected his personal identifiers, such as his Facebook ID (Compl. ¶ 26), but as explained, personal identifiers do not constitute the contents of a communication. Accordingly, Plaintiff's ECPA claim should be dismissed for this additional reason.

### *2. Plaintiff's invasion of privacy claim should be dismissed*

A cause of action for invasion of privacy (also known as intrusion upon seclusion) is the same under California and Minnesota common law.[5] To state a claim, a plaintiff must allege (1) that the defendant intruded into some matter which the plaintiff had a reasonable expectation of privacy and (2) that the intrusion was highly offensive to a reasonable person. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *Loeffler v. City of Anoka*, 79 F. Supp. 3d 986, 999 (D. Minn. 2015). Plaintiff has failed to allege both elements.

***First***, Plaintiff has failed to allege an intrusion. Courts, including courts in this district, hold that when a plaintiff "voluntarily browses" a website, "there is no intrusion when [a] Pixel transmits [] information to Meta." *Okash*, 2024 WL 1285779, at *7 (collecting cases). Indeed, in *Okash*, the court held that because the plaintiff voluntarily visited the defendant's website and provided his data to the website, the defendant "did not intrude upon his seclusion." *Id.*; *see also Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) (holding that no intrusion occurred where the defendant "improperly disclosed data about [the plaintiff] which it properly possessed"); *Nienaber*, 2024 WL 2133709, at *9 ("Because Plaintiff voluntarily shared her information with Defendant, there was no *intrusion* upon Plaintiff's solitude, seclusion, or private affairs by Defendant."). Here, Plaintiff alleges that after he

[5] Plaintiff does not specify whether he is asserting his common-law claims for invasion of privacy, implied contract, or unjust enrichment under California or Minnesota law. As a result, U.S. Bank argues that Plaintiff's claims are insufficient under both states' laws.

voluntarily visited the Website and "input personal information" into the site, "U.S. Bank ***disclosed*** to Meta" his "personal and financial information." (Compl. ¶¶ 62-63 [emphasis added].) Thus, Plaintiff's claim should be dismissed because he alleges a disclosure, not an intrusion.

***Second***, even if the disclosure of Plaintiff's PIFI to Meta was an intrusion, Plaintiff has not plausibly alleged that it was highly offensive to a reasonable person. Under California and Minnesota law, a plaintiff "must meet a high threshold of offensiveness . . . to have a viable claim for intrusion upon seclusion." *Loeffler*, 2014 WL 4449674, at *26; *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (stating that California common law sets "a high bar for an invasion of privacy claim"). Indeed, an intrusion is highly offensive only if it is "sufficiently serious and unwarranted so as to constitute an egregious breach of the social norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Thus, courts have held that the "disclosure of personal information, including social security numbers" does not amount to a highly offensive intrusion. *Low*, 900 F. Supp. 2d at 1025. Nor does a "conclusory claim that Google collects general information about a user's religion, political affiliation, or sexual preference." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022). Here, given that the disclosure of an individual's social security number does not amount to a highly offensive intrusion, Plaintiff's conclusory allegation that U.S. Bank disclosed his undefined PIFI certainly does not constitute a highly offensive intrusion. Plaintiff's claim should therefore be dismissed.

### *3. Plaintiff's implied contract claim should be dismissed*

A cause of action for implied contract is the same under California and Minnesota law. In both states, the plaintiff must plausibly allege the elements of an express contract "except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008); *Tri-State Bobcat, Inc. v. FINN Corp.*, 338 F. Supp. 3d 971, 982 (D. Minn. 2018). Thus, Plaintiff must allege "(1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1010 (N.D. Cal. 2018). Here, Plaintiff alleges that U.S. Bank and Plaintiff entered into an implied contract where in exchange for "receiving services" from U.S. Bank, Plaintiff provided his PIFI, "which [U.S. Bank] agreed to safeguard and not disclose" without Plaintiff's consent. (Compl. ¶¶ 95-96.) Plaintiff alleges U.S. Bank breached the parties' contract when it disclosed Plaintiff's PIFI to Meta and that Plaintiff suffered damages as result—"the loss of the benefit of [his] bargain and diminution in value of [his] PIFI." (Compl. ¶¶ 99-100.) Plaintiff's claim, however, fails for at least two reasons.

***First***, Plaintiff has not alleged any facts demonstrating that U.S. Bank implicitly promised to not disclose his PIFI to Meta. Instead, Plaintiff states, without any factual support, that U.S. Bank agreed to not disclose Plaintiff's PIFI without his consent. (Compl. ¶ 96.) Plaintiff's conclusory allegation is insufficient; he must allege facts that would allow the Court to infer that U.S. Bank's conduct constituted an implied promise. To the extent Plaintiff argues that the cited portions of U.S. Bank's Privacy Policy in the

Complaint evince an implied promise to not disclose Plaintiff's PIFI without his consent (Compl. ¶¶ 47-52), Plaintiff is mistaken. Plaintiff does not identify any portions of the Policy that imply U.S. Bank would not disclose his PIFI without his consent. To the contrary, as in Section III.C below, portions of the Privacy Policy and California Policy affirmatively state that U.S. Bank may share such information with third parties like Meta. Accordingly, Plaintiff has failed to allege the existence of an implied contract.

***Second***, even if Plaintiff could allege the existence of an implied contract, Plaintiff has not plausibly alleged damages resulting from U.S. Bank's purported breach. Plaintiff alleges that he lost the benefit of the bargain and that his PIFI diminished in value. (Compl. ¶ 100.) But this allegation is merely a legal conclusion that is "devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (2009). Plaintiff does not explain, for example, how his PIFI lost value or what the "benefit of the bargain" was, let alone how he lost such a benefit from U.S. Bank's alleged breach. As a result, Plaintiff has failed to allege an essential element of his breach of implied contract claim. His claim should therefore be dismissed. *See B.K.*, 721 F. Supp. 3d at 1068 (dismissing implied contract claim where the plaintiffs did not allege that how they were damaged).

### *4. Plaintiff's unjust enrichment claim should be dismissed*

Plaintiff's unjust enrichment claim is contingent on his other claims. (*See* Compl. ¶ 106 (alleging U.S. Bank was unjustly enriched based on "the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint"). Therefore, if the Court dismisses Plaintiff's other claims, it must also dismiss his claim for unjust enrichment.

But even if the Court does not dismiss Plaintiff's other claims, his claim for unjust enrichment fails for three additional reasons.

***First***, California courts have held that "there is no cause of action in California labeled 'unjust enrichment.'" *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206 (2023). Thus, if the Court applies California common law, Plaintiff's unjust enrichment claim should be dismissed.

***Second***, under Minnesota law, an unjust enrichment claim is "premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012), *superseded by statute on other grounds*, Minn. Stat. § 645.16. Thus, if the Court agrees that Plaintiff has failed to allege that an implied contract existed, Plaintiff's unjust enrichment claim fails.

***Third***, to allege unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit *at the plaintiff's expense*." *See Katz-Lacabe v. Oracle Am.*, Inc., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (emphasis added). Here, Plaintiff has not alleged any facts demonstrating that he expended his own resources when applying for a credit card on the Website; nor has he alleged facts showing how his PIFI has decreased in value. Accordingly, he has not shown that U.S. Bank was enriched as his expense. For this additional reason, Plaintiff's unjust enrichment claim should be dismissed.

### C. <u>Plaintiff's Allegations That U.S. Bank Violated The Gramm-Leach-Bliley Act Are Irrelevant, And Also Wrong</u>

The Complaint alleges that U.S. Bank violated the GLBA. But none of these allegations are relevant. That is because "[n]o private right of action exists for an alleged violation of the GLBA." *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007). Plaintiff thus cannot assert a claim under the statute and does not assert a cause of action based on the alleged conduct.

In any event, Plaintiff's allegation that U.S. Bank violated the GLBA is incorrect. The GLBA regulates how financial institutions handle their customers "nonpublic personal information." 15 U.S.C. § 6801. Nonpublic personal information includes any information "[a] consumer provided to [a financial institution] to obtain a product or service from [the institution]." 16 C.F.R. § 313.3. Under the GLBA, a financial institution is prohibited from disclosing "any nonpublic personal information about a consumer to a nonaffiliated third party" unless the institution provides the consumer with "an initial notice" and an "opt out notice," and the consumer does not opt out after a reasonable opportunity to do so. *Id.* § 313.10. The initial notice must include, among other things, the categories of nonpublic personal information that the financial institution collects and discloses and the categories of third parties that the institution shares the information with. *Id.* § 313.6. The opt out notice "must provide a clear and conspicuous notice to each of [the institution's] consumers that accurately explains the right to opt out." 16 C.F.R. § 313.7.

Here, Plaintiff alleges that U.S. Bank failed to provide the required notices to Plaintiff in its Online Privacy and Security policy ("Privacy Policy"). (Compl. ¶¶ 46-50.) In making this allegation, Plaintiff baldly ignores the relevant portions of the Privacy Policy, and further ignores U.S. Bank's more specific California Privacy Center policy ("California Policy"), which applies to him as a California resident.[6] The actual terms of those policies contradict and negate Plaintiff's assertions.

***First***, as to the Privacy Policy, available at https://www.usbank.com/about-us-bank/privacy/security.html, it clearly explains the type of information U.S. Bank collects, the entities U.S. Bank shares that information with, and how a website visitor can opt out of having their information shared. Under the heading "1. Types of Information We Collect," the Privacy Policy states that U.S. Bank collects personal information "that identifies (whether directly or indirectly) a particular individual, such as information you provide on our forms, surveys, applications or similar online fields." (*Id.*) Under the heading "2. How We Collect Your Information," the policy states that U.S. Bank uses "tracking technologies, such as cookies, and pixel tags" that are employed by third-party service providers to collect personal information. (*Id.*) And the policy discloses that U.S. Bank shares the collected personal information with the service providers who may use it

---

[6] On a motion to dismiss, a district court may consider "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Because Plaintiff quotes and references the Privacy Policy, the court may consider it. *See Okash v. Essentia Health*, No. CV 23-482, 2024 WL 1285779, at *3 (D. Minn. Mar. 26, 2024) (holding that the court could consider a website's privacy policy referenced in the complaint). In addition to the Privacy Policy, the Court may also consider the California Policy because it is expressly referenced in the Privacy Policy.

"to customize advertisements to [a website user] on other sites as [the user] browse[s] the web." (*Id.*) Finally, the policy explains how a user may opt out of having their information shared. (*Id.* ["If you prefer not to have non-personal information used for online behavioral advertising purposes, you may also opt out here."].)

***Second***, the California Policy, which is referenced in the Privacy Policy, and is available at https://www.usbank.com/about-us-bank/privacy/state-personal-information-program.html, similarly details the categories of personal information that U.S. Bank collects and discloses, and how a user can opt out of having their information shared. Specifically, the California Policy states that U.S. Bank uses pixels and other tracking technologies to collect information from a visitor to the Website and that U.S. Bank may share this information "with third-parties for cross-context behavioral advertising." (*Id.*) The California Policy also provides an opt out link that explains how a user may opt out of the sharing of their personal information. (*Id.*)

In each policy, a user is put on notice regarding what information U.S. Bank collects, who the information is shared with, and how a user can opt out of having their information shared. As a result, Plaintiff's allegation that the GLBA was violated are contradicted by the very policies he cites. All that said, as noted above, whether the GLBA was violated is irrelevant. Plaintiff cannot assert a claim based on the GLBA, and his claims otherwise fail, as explained above.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant U.S. Bank's Motion to Dismiss.

Date: December 9, 2024

Respectfully submitted,

By: */s/ Jay T. Ramsey*

Todd A. Noteboom (#0240047)
William D. Thomson (#0396743)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
todd.noteboom@stinson.com
william.thomson@stinson.com

Jay T. Ramsey (admitted *pro hac vice*)
jramsey@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON**
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700