**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTOPHER BUTLER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANCORP,<br><br>Defendant. | Case No. 0:24-cv-03700<br><br>Hon. Jeffrey M. Bryan<br><br>**DEFENDANT U.S. BANCORP'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ALLEGATIONS IN THE FAC ........ 3

III. THE COURT SHOULD DISMISS THE FAC ........ 4

A. All Of Plaintiff's Claims Should Be Dismissed Because He Does Not Allege Facts Supporting His Claims ........ 4

B. Plaintiff's Claims Should Be Dismissed For Additional, Independent Reasons ........ 6

1. Plaintiff's ECPA claim should be dismissed because the party exception applies to U.S. Bank and Plaintiff does not allege that Meta intercepted the "contents" of his communications ........ 6

2. Plaintiff's UCL claims should be dismissed ........ 9

a. Plaintiff Lacks Standing to Bring UCL Claims Based on U.S. Bank's Alleged Disclosure of Plaintiff's Personal Information to Meta ........ 9

b. Plaintiff's UCL Claim Premised On A Violation Of The GLBA Fails Because U.S. Bank's Alleged Disclosure of Plaintiff's Personal Information to Meta Does Not Violate the GLBA ........ 12

3. Plaintiff's CCPA claim should be dismissed because Plaintiff does not allege an unauthorized disclosure of personal information ........ 15

4. Plaintiff's invasion of privacy claim should be dismissed because Plaintiff does not allege an intrusion or an intrusion that was highly offensive ........ 17

5. Plaintiff's implied contract claim should be dismissed because Plaintiff does not allege a mutual agreement or damages ........ 19

6. Plaintiff's unjust enrichment claim should be dismissed for multiple reasons ........ 22

IV. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 2, 4, 21

*Augustine v. Great Wolf Resorts, Inc.*
No. 23-CV-00281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18, 2024) .......... 8

*B.K. v. Eisenhower Medical Center*
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 5, 6, 21

*Banga v. Equifax Info. Servs. LLC*
No. 14-CV-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) .......... 18

*Bell Atlantic Corporation v. Twombly*
550 U.S. 544 (2007) .......... 2, 4, 5

*Brodsky v. Apple Inc.*
No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) .......... 8

*Brooks v. Roy*
776 F.3d 957 (8th Cir. 2015) .......... 6

*C. M. v. MarinHealth Med. Grp., Inc.*
No. 23-CV-04179-WHO, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) .......... 12

*Caldas v. Affordable Granite & Stone, Inc.*
820 N.W.2d 826 (Minn. 2012) .......... 22

*Carlsen v. GameStop, Inc.*
833 F.3d 903 (8th Cir. 2016) .......... 20

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 5, 6

*Danfer-Klaben v. JPMorgan Chase Bank, N.A.*
No. SACV21-262 PSGJ DEX, 2022 WL 3012528 (C.D. Cal. Jan. 24, 2022) .......... 17

*Doe v. Meta Platforms, Inc.*
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 11

*Ehret v. Uber Techs., Inc.*
68 F. Supp. 3d 1121 (N.D. Cal. 2014) .......... 9

*In re Facebook Internet Tracking Litig.*
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 7

*In re Facebook Priv. Litig.*
791 F. Supp. 2d 705 (N.D. Cal. 2011) .......... 10

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) .......... 19

*Gardiner v. Walmart Inc.*
No. 20-CV-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......... 16

*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*
750 F.3d 1098 (9th Cir. 2014) .......... 7, 8

*Hall v. Centerspace, LP*
No. 22-CV-2028, 2023 WL 3435100 (D. Minn. May 12, 2023) .......... 22

*Hammerling v. Google LLC*
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 17, 19

*Katz-Lacabe v. Oracle Am.*, Inc.
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 22

*Kwikset Corp. v. Superior Ct.*
51 Cal. 4th 310 (2011) .......... 9

*Loeffler v. City of Anoka*
79 F. Supp. 3d 986 (D. Minn. 2015) .......... 17, 18

*Low v. LinkedIn Corp.*
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 10, 18, 19

*McCoy v. Alphabet, Inc.*
No. 20-CV-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .......... 15

*Moore v. Centrelake Med. Grp., Inc.*
83 Cal. App. 5th 515 (2022) .......... 11

*Nienaber v. Overlake Hospital Medical Center*
No. 2:23-CV-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024) .......... 6, 18

*Okash v. Essentia Health*
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 7, 13, 18

*Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*
360 F. Supp. 3d 994 (N.D. Cal. 2018) .................... 19

*Retired Emps. Ass'n of Orange Cty., Inc. v. Cty. of Orange*
52 Cal. 4th 1171 (2011) .................... 21

*Ruiz v. Gap, Inc.*
540 F. Supp. 2d 1121 (N.D. Cal. 2008) .................... 10

*Schriener v. Quicken Loans, Inc.*
774 F.3d 442 (8th Cir. 2014) .................... 13

*Sepanossian v. Nat'l Ready Mix Co., Inc.*
97 Cal. App. 5th 192 (2023) .................... 22

*Sequeira v. United States Dep't of Homeland Sec.*
722 F. Supp. 3d 996 (N.D. Cal. 2024) .................... 10

*In re Sequoia Benefits & Ins. Data Breach Litig.*
No. 22-CV-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) .................... 16

*Starr v. Baca*
652 F.3d 1202 (9th Cir. 2011) .................... 6

*Thompson v. Home Depot, Inc.*
No. 07-cv-1058, 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) .................... 10

*Tri-State Bobcat, Inc. v. FINN Corp.*
338 F. Supp. 3d 971 (D. Minn. 2018) .................... 19

*Yari v. Producers Guild of Am., Inc.*
161 Cal. App. 4th 172 (2008) .................... 19

*Yoon v. Lululemon United States*
549 F. Supp. 3d 1073 (C.D. Cal. 2021) .................... 8

*Yunker v. Pandora Media, Inc.*
No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .................... 19

**<u>Statutes</u>**

15 U.S.C. § 6801 .................... 12

15 U.S.C. § 6805 .................... 9

18 U.S.C. § 2510 .................... 7

18 U.S.C. § 2511 .......... 6, 7

Cal. Bus. Prof. Code § 17200 .......... 9

Cal. Bus. Prof. Code § 17204 .......... 9

Cal. Civ. Code § 1798.150 .......... 15, 16

Cal. Fin. Code § 4057 .......... 9

Minn. Stat. § 645.16 .......... 22

**Other Authorities**

16 C.F.R. § 313.3 .......... 12

16 C.F.R. § 313.6 .......... 13

16 C.F.R. § 313.7 .......... 13

16 C.F.R. § 313.10 .......... 12

## I. INTRODUCTION

Plaintiff alleges that while applying for a credit card on Defendant U.S. Bancorp's ("U.S. Bank") website, his "personally identifiable financial information" was unlawfully disclosed to Meta and Facebook via the Meta Pixel—a website technology that U.S. Bank allegedly installed on its website. In his original complaint, Plaintiff asserted statutory and common law claims for violation of the Electronic Communications Privacy Act ("ECPA"), invasion of privacy, breach of implied contract, and unjust enrichment. U.S. Bank moved to dismiss Plaintiff's original complaint for failure to state a claim. In the motion, U.S. Bank identified multiple reasons why each of Plaintiff's claims should be dismissed, including because Plaintiff failed to allege the basic facts necessary to support any claim for relief. In response to the motion, Plaintiff opted to file a First Amended Complaint ("FAC"). The FAC fails to cure the pleading deficiencies identified in the original complaint, simply adding three more statutory claims but not any additional factual allegations. As a result, Plaintiff still does not allege when he visited U.S. Bank's website, what webpages he browsed while on the site, the credit card he applied for, the information he sent to U.S. Bank, the information U.S. Bank disclosed to Meta about him, or even if he is a U.S. Bank accountholder.[1] It should thus come as no surprise that the FAC should be dismissed.

---

[1] Before filing its motion to dismiss Plaintiff's original complaint (ECF No. 13-1), U.S. Bank's counsel asked Plaintiff's counsel to confirm whether Plaintiff was a U.S. Bank accountholder, but Plaintiff's counsel refused. Because U.S. Bank is unable to confirm whether Plaintiff is an accountholder, U.S. Bank is not moving to compel arbitration at this juncture. U.S. Bank reserves the right to move to compel arbitration at a later date if it turns out Plaintiff is an accountholder.

To start, all of Plaintiff's claims must be dismissed because Plaintiff's conclusory allegations do not meet the plausibility standard under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As set forth above and below, Plaintiff has not even included basic allegations about when he visited the site, what information he purportedly provided, and what information was purportedly provided to Facebook. Beyond that, each of Plaintiff's claims fail for additional reasons.

(1) *ECPA.* U.S. Bank has not violated the ECPA because the ECPA is a one-party consent statute and U.S. Bank was a party to the communications with Plaintiff. As a party to the alleged communications, U.S. Bank consented to any alleged interception and disclosure of Plaintiff's personal information to Meta.

(2) *California's Unfair Competition Law ("UCL").* Plaintiff's two UCL claims fail because Plaintiff does not have statutory standing to assert either claim.

(3) *California Consumer Privacy Act ("CCPA")*. Plaintiff's CCPA claim must be dismissed because Plaintiff has not alleged that U.S. Bank disclosed any information protected by the CPPA or that any such disclosure was unauthorized.

(4) *Invasion of Privacy*. Plaintiff's invasion of privacy claim fails because he does not allege facts to support a claim that he suffered an intrusion into a private area that was so beyond the pale that it shocks the conscience.

(5) *Breach of Implied Contract*. Plaintiff's breach of implied contract claim fails because no implied contract exists between Plaintiff and U.S. Bank. Indeed, the very Privacy Policy that Plaintiff cites contradicts his claims.

(6) *Unjust Enrichment*. Plaintiff's unjust enrichment claim fails because it is contingent on his other claims.

For these reasons, as further explained below, the Motion should be granted.

## II. ALLEGATIONS IN THE FAC

U.S. Bank operates www.usbank.com (the "Website") where its customers can access their account information and apply for U.S. Bank's financial products and services. (FAC ¶¶ 3, 7.) Plaintiff alleges that he is a U.S. Bank "consumer" (unclear if he is a customer or accountholder) and that he visited the Website to apply for a credit card. (*Id.* ¶¶ 63, 65–66.) While on the Website, Plaintiff alleges that he "input personal information into the U.S. Bank Application for the credit card product," and that this information was disclosed to third parties Meta and Facebook via the Meta Pixel. (*Id.* ¶¶ 6, 67–76.) Plaintiff does not specify what information he inputted into the Website, but he generally refers to what information it was as "personally identifiable financial information" or "PIFI." (*Id.* ¶ 1.) Plaintiff asserts that he did not consent to U.S. Bank's sharing of his PIFI with Meta and Facebook. (*Id.* ¶¶ 75–76.) Based on this, Plaintiff asserts seven causes of action for (1) violation of the UCL premised on a violation of the California Financial Information Privacy Act ("Cal. FIPA"); (2) violation of the UCL based on a violation of the Gramm-Leach-Bliley Act ("GLBA"); (3) violation of the CCPA; (4) Invasion of Privacy, (5) Breach of Implied Contract; (6) Unjust Enrichment, and (7) violations of the ECPA. (*Id.* ¶¶ 90–231.)[2]

---

[2] Plaintiff also alleges (but does not assert a claim) for violation of the Federal Trade Commission Act. (FAC ¶ 60–62.) However, that allegation is derivative of U.S. Bank's purported violation of the GLBA. (*Id.*)

## III. <u>THE COURT SHOULD DISMISS THE FAC</u>

### A. <u>All Of Plaintiff's Claims Should Be Dismissed Because He Does Not Allege Facts Supporting His Claims</u>

Plaintiff's allegations in the FAC are too vague and generalized to support any claim for relief. To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plausibility standard requires more than "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678.

The thrust of Plaintiff's FAC is that U.S. Bank collected his PIFI and transmitted it to Meta and Facebook. But like Plaintiff's original complaint, the FAC fails to allege the basic facts necessary to support Plaintiff's theory. Plaintiff still does not allege when he visited the Website, what pages he browsed while on the site, or even if he is a U.S. Bank accountholder. Nor does he specify what information he entered into the Website, what information the Meta Pixel collected about him, or how any of the collected information constitutes PIFI. While Plaintiff alleges that the Meta Pixel collected "data such as the specific pages visited [and] details entered into financial product applications" (FAC ¶ 21), he does not explain what these "details" are or tie this allegation back to his experience. Most critically, Plaintiff still never clearly defines "PIFI." He vaguely labels it as "customer interactions," "account information," "website activity," "application details," or "onboarding information" that U.S. Bank customers input "into U.S. Bank's website to receive financial products." (*Id.* ¶¶ 5, 7, 14, 37, 48, 104, 137, 215, 223.) But

these "labels and conclusions" are insufficient. *See Twombly*, 550 U.S. at 555. At bottom, Plaintiff alleges that the Meta Pixel collected some unspecified information that he purportedly entered on an undisclosed webpage of U.S. Bank's website at an unspecified time as part of a process to apply for an unnamed credit card.[3] U.S. Bank cannot even begin to verify these allegations or respond to them because there is no substance to them.

Courts regularly dismiss similarly vague complaints. For example, in *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), the plaintiffs alleged that while browsing the defendant's website the Meta Pixel collected their "sensitive personal and health information." *Id.* at 1121–24. The plaintiffs, however, never specified "*what* personal or health information" the Meta Pixel collected from them. *Id.* at 1124 (emphasis added). The district court dismissed the complaint because the plaintiffs' allegations were "utterly devoid of factual enhancement." *Id.* Similarly, in *B.K. v. Eisenhower Medical Center*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024), *on reconsideration in part*, No. EDCV 23-2092, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024), the district court dismissed the plaintiffs' complaint because the plaintiffs (1) "fail[ed] to allege what, if any, medical information or medical records were transmitted or disclosed" to Meta, and (2) asserted "vague allegations about . . . their experiences" on the defendant's

---

3 Plaintiff also still confusingly alleges that the Meta Pixel collects "the video content the users request or obtain on a particular website." (FAC ¶ 25.) As stated in U.S. Bank's original motion to dismiss, Plaintiff does not allege that he viewed a video on U.S. Bank's website; nor does he assert a violation of the Video Privacy Protection Act.

website. *Id.* at 1064. Finally, in *Nienaber v. Overlake Hospital Medical Center*, No. 2:23-CV-01159, 2024 WL 2133709 (W.D. Wash. May 13, 2024), the district court dismissed the plaintiff's complaint because the plaintiff did not specify "what information she entered on Defendant's Public Website" that the Meta Pixel intercepted. *Id.* at *5.

Like the plaintiffs in *Cousin, B.K.*, and *Nienaber*, Plaintiff does not specify what information the Meta Pixel collected about him. Thus, the FAC fails to allege the "underlying facts sufficient to give fair notice" to U.S. Bank to enable it "to defend itself effectively." *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011); *Brooks v. Roy*, 776 F.3d 957, 960 (8th Cir. 2015) (same). As a result, the Court should dismiss the FAC in its entirety.

### B. <u>Plaintiff's Claims Should Be Dismissed For Additional, Independent Reasons</u>

#### *1. Plaintiff's ECPA claim should be dismissed because the party exception applies to U.S. Bank and Plaintiff does not allege that Meta intercepted the "contents" of his communications*

The ECPA prohibits the intentional interception of electronic communications as well as the intentional "use" or "disclosure" of the "contents" of communications that were unlawfully intercepted. *See* 18 U.S.C. §§ 2511(a)–(d). However, the ECPA is a one-party consent statute—meaning if one party consents to the interception, that party has not violated the ECPA unless the party consented "for the purpose of committing any criminal or tortious act." *See id.* § 2511(2)(d). Here, Plaintiff's ECPA claim fails for at least two reasons.

***First***, the party exception applies to U.S. Bank. *See* 18 U.S.C. § 2511(2)(d). Plaintiff concedes that U.S. Bank was a party to the alleged communications at issue, and that it consented to Meta's interception of his communications. (FAC ¶¶ 26-27.) He also does not allege that U.S. Bank permitted Meta to intercept the communications for a criminal or tortious purpose. Indeed, in his original Complaint, Plaintiff tried to take advantage of the criminal or tortious purpose by alleging that U.S. Bank permitted the interception for the alleged tortious purpose of invading his privacy. (ECF No. 1, ¶¶ 129-131.) But Plaintiff has removed those allegations from his FAC, and Plaintiff has not otherwise added allegations supporting such an exemption. Accordingly, U.S. Bank is exempt from liability under the ECPA. *See Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) (dismissing the plaintiff's ECPA claim based on the defendant's use of the Meta Pixel because the defendant was a party to the communication and the crime-tort exception did not apply).

***Second***, even if the party exception does not apply, Plaintiff has failed to allege that the "contents" of his alleged communications were intercepted, used, or disclosed. The ECPA defines "contents" as "the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). Put differently, "contents" refer "to the intended message conveyed by the communication." *Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098, 1107 (9th Cir. 2014). They do not include "the characteristics of the message that is generated in the course of the communication," such as personal identifiers (like a name, email, or Facebook ID) or "browser type and operating system." *Id.* at 1107–09; *In re Facebook Internet Tracking Litig.*, 140 F. Supp.

3d 922, 935 (N.D. Cal. 2015); *Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1086 (C.D. Cal. 2021).

Here, Plaintiff has failed to allege that Meta intercepted any substantive communications. As explained, Plaintiff alleges that Meta intercepted his PIFI (FAC ¶¶ 1, 68), but he does specify what "PIFI" is. As such, he has not demonstrated that PIFI constitutes the contents of a communication. Likewise, Plaintiff's allegation that the Meta Pixel collected his personal identifiers, such as his Facebook ID (*id.* ¶¶ 30-31), is insufficient because personal identifiers are considered "record information." *See In re Zynga Privacy Litig.*, 750 F.3d at 1107. Finally, Plaintiff's allegation that the Meta Pixel intercepted his "product application details, specific queries, and onboarding data" (*id.* ¶ 215) is insufficient because courts have dismissed ECPA claims based on similar allegations. *See Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *7 (N.D. Cal. Aug. 30, 2019) (holding that the plaintiffs' allegation that the defendant intercepted their "login activities" did not constitute the "contents" of a communication under the ECPA); *Augustine v. Great Wolf Resorts, Inc.*, No. 23-CV-00281-DMS-DTF, 2024 WL 3450967, at *5 (S.D. Cal. July 18, 2024) (holding that the plaintiff's allegation that a third party intercepted, among other things, the plaintiff's "interactions with the Defendant's website" did not constitute the contents of a communication).

Accordingly, Plaintiff's ECPA claim should be dismissed because the party exception applies and Plaintiff has not plausibly alleged that the Meta Pixel intercepted the contents of his communications.

### 2. *Plaintiff's UCL claims should be dismissed*

Plaintiff's sole basis for alleging a violation of California Business and Professions Code section 17200 is that U.S. Bank's actions were "unlawful." (FAC ¶¶ 93, 129.) Plaintiff bases his claims on alleged violations of California's Financial Information Privacy Act ("Cal. FIPA") and the federal GLBA.[4] Plaintiff's claims fail, however, because: (1) Plaintiff does not have standing under the UCL, and (2) U.S. Bank's alleged disclosure of Plaintiff's personal information to Meta does not violate the GLBA.

#### a. **Plaintiff Lacks Standing to Bring UCL Claims Based on U.S. Bank's Alleged Disclosure of Plaintiff's Personal Information to Meta**

In order to establish standing under the UCL, as amended by California Proposition 64, a plaintiff must demonstrate that he has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. Prof. Code § 17204 (emphasis added); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). "Accordingly, standing under the UCL is far narrower than traditional federal standing requirements" and much "more stringent." *Ehret v. Uber Techs., Inc.*, 68 F.

---

[4] Plaintiff uses the UCL as a procedural loophole to bring these claims, as neither statute confers a private right of action. Cal. Fin. Code § 4057(e) ("[T]he civil penalties provided for in this section shall be exclusively assessed and recovered in a civil action brought in the name of the people of the State of California . . . by any of the following: (1) The Attorney General (2) the . . . regulator . . . of the financial institution."); 15 U.S.C. § 6805(a) ("This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law . . . .").

Supp. 3d 1121, 1132 (N.D. Cal. 2014) ("Whereas a federal plaintiff's injury in fact may be intangible and need not involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's injury in fact specifically involve lost money or property." (internal quotation marks omitted)).

Plaintiff does not have standing to bring UCL claims because Plaintiff has neither identified his injury nor tied that injury to lost money or property. Here, Plaintiff does not allege that U.S. Bank illicitly acquired money or property from Plaintiff. Instead, Plaintiff alleges that he applied for a credit card on U.S. Bank's website (FAC ¶ 66), and that's it.

In addition, Plaintiff's claims under Cal. FIPA and the GLBA allege harm based on the allegation that U.S. Bank "disclos[ed] nonpublic personal information [about Plaintiff] to . . . Meta." (*Id.* ¶¶ 122, 158.) However, "personal information does not constitute money or property under Proposition 64." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1026 (N.D. Cal. 2012); *see also In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011) ("A plaintiff's personal information does not constitute property under the UCL."); *Thompson v. Home Depot, Inc.*, No. 07-cv-1058, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007) (same). Therefore, the unauthorized dissemination of personal information is insufficient to satisfy UCL standing. *Sequeira v. United States Dep't of Homeland Sec.*, 722 F. Supp. 3d 996, 1008 (N.D. Cal. 2024) (dismissing UCL claim predicated on alleged violation of Cal. FIPA because allegations that a plaintiff's "privacy has been violated because of the companies' sharing of his personal information" does not constitute economic injury); *see also Ruiz v. Gap, Inc.*,

540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008), aff'd, 380 F. App'x 689 (9th Cir. 2010) (dismissing "unlawful" UCL claim because "unauthorized release of personal information" is not a loss of money or property).

The closest Plaintiff comes to alleging economic injury is his allegation—contained within his breach of implied contract claim—that U.S. Bank's alleged disclosure of his PIFI has resulted in the "diminution in value" of that information. (FAC ¶ 202.) But Plaintiff alleges no facts to support his diminution-in-value theory, such as the existence of a market for his PIFI, that he intended to participate in such a market, or that a prospective purchaser would refuse to purchase Plaintiff's PIFI after learning that his PIFI had been disseminated to Meta. The California Court of Appeal has held that a plaintiff that does not allege such facts does not have standing under the UCL:

> Appellants properly pleaded only that their PII was stolen and disseminated, and that a market for it existed. They did not allege they ever attempted or intended to participate in this market, or otherwise to derive economic value from their PII. Nor did they allege that any prospective purchaser of their PII might learn that their PII had been stolen in this data breach and, as a result, refuse to enter into a transaction with them, or insist on less favorable terms. In the absence of any such allegation, appellants failed to adequately plead that they lost money or property in the form of the value of their PII.

*Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023). What's more, this theory of economic injury makes little sense. As at least one court has observed, "[w]ith respect to the diminution in value theory of injury . . . where the crux of this case concerns Meta's receipt of individually identifiable health information, that plaintiffs apparently do

not want Meta or anyone other than their healthcare providers to have[,] it is incongruous for plaintiff to then allege they intended to participate in this market, or otherwise to derive economic value from their PII." *See C. M. v. MarinHealth Med. Grp., Inc.*, No. 23-CV-04179-WHO, 2024 WL 217841, at *2 (N.D. Cal. Jan. 19, 2024) (internal quotations omitted).

Because Plaintiff has alleged no loss of money or property as a result of the unlawful conduct alleged in Plaintiff's UCL claims, Plaintiff does not have standing to pursue the UCL claims, and the claims must be dismissed.

**b. Plaintiff's UCL Claim Premised On A Violation Of The GLBA Fails Because U.S. Bank's Alleged Disclosure of Plaintiff's Personal Information to Meta Does Not Violate the GLBA**

Plaintiff premises one of his UCL claims on U.S. Bank's alleged violation of the GLBA. But Plaintiff's claim fails because U.S. Bank has not violated the GLBA.

The GLBA regulates how financial institutions handle their customers' "nonpublic personal information." 15 U.S.C. § 6801. Nonpublic personal information includes any information "[a] consumer provided to [a financial institution] to obtain a product or service from [the institution]." 16 C.F.R. § 313.3. Under the GLBA, a financial institution is prohibited from disclosing "any nonpublic personal information about a consumer to a nonaffiliated third party" unless the institution provides the consumer with "an initial notice" and an "opt out notice," and the consumer does not opt out after a reasonable opportunity to do so. *Id.* § 313.10. The initial notice must include, among other things, the categories of nonpublic personal information that the financial institution

collects and discloses and the categories of third parties that the institution shares the information with. *Id.* § 313.6. The opt out notice "must provide a clear and conspicuous notice to each of [the institution's] consumers that accurately explains the right to opt out." 16 C.F.R. § 313.7.

Here, Plaintiff alleges that U.S. Bank violated the GLBA by failing to provide the required notices to Plaintiff in its Online Privacy and Security policy ("Privacy Policy"). (FAC ¶¶ 147–57.) In making this allegation, Plaintiff baldly ignores the relevant portions of the Privacy Policy, and further ignores U.S. Bank's more specific California Privacy Center policy ("California Policy"), which applies to him as a California resident.[5] The actual terms of those policies contradict and negate Plaintiff's assertions.

***First***, as to the Privacy Policy, available at https://www.usbank.com/about-us-bank/privacy/security.html, it clearly explains the type of information U.S. Bank collects, the entities U.S. Bank shares that information with, and how a website visitor can opt out of having their information shared. Under the heading "1. Types of Information We Collect," the Privacy Policy states that U.S. Bank collects personal information "that identifies (whether directly or indirectly) a particular individual, such as information you provide on our forms, surveys, applications or similar online fields." (*Id.*) Under the

---

[5] On a motion to dismiss, a district court may consider "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). Because Plaintiff quotes and references the Privacy Policy, the court may consider it. *See Okash v. Essentia Health*, No. CV 23-482, 2024 WL 1285779, at *3 (D. Minn. Mar. 26, 2024) (holding that the court could consider a website's privacy policy referenced in the complaint). In addition to the Privacy Policy, the Court may also consider the California Policy because it is expressly referenced in the Privacy Policy.

heading "2. How We Collect Your Information," the policy states that U.S. Bank uses "tracking technologies, such as cookies, and pixel tags" that are employed by third-party service providers to collect personal information. (*Id.*) And the policy discloses that U.S. Bank shares the collected personal information with the service providers who may use it "to customize advertisements to [a website user] on other sites as [the user] browse[s] the web." (*Id.*) Finally, the policy explains how a user may opt out of having their information shared. (*Id.* ["If you prefer not to have non-personal information used for online behavioral advertising purposes, you may also opt out here."].)

***Second***, the California Policy, which is referenced in the Privacy Policy, and is available at https://www.usbank.com/about-us-bank/privacy/state-personal-information-program.html, similarly details the categories of personal information that U.S. Bank collects and discloses, and how a user can opt out of having their information shared. Specifically, the California Policy states that U.S. Bank uses pixels and other tracking technologies to collect information from a visitor to the Website and that U.S. Bank may share this information "with third-parties for cross-context behavioral advertising." (*Id.*) The California Policy also provides an opt out link that explains how a user may opt out of the sharing of their personal information. (*Id.*)

In each policy, a user is put on notice regarding what information U.S. Bank collects, who the information is shared with, and how a user can opt out of having their information shared. As a result, Plaintiff's allegation that the GLBA was violated is contradicted by the very policies he cites. As a result, Plaintiff's UCL claim premised on the GLBA must be dismissed.

### 3. *Plaintiff's CCPA claim should be dismissed because Plaintiff does not allege an unauthorized disclosure of personal information*

The CCPA provides a limited private right of action related to data breaches. *McCoy v. Alphabet, Inc.*, No. 20-CV-05427-SVK, 2021 WL 405816, at *8 (N.D. Cal. Feb. 2, 2021) (stating that the private right of action under CCPA "is related to personal information security breaches"). Specifically, it states that a plaintiff may assert a claim for damages if (1) the plaintiff's "personal information" (2) is "subject to an unauthorized access and exfiltration, theft, or disclosure" (3) "as a result of" the defendant's failure "to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150. The definition of "personal information" includes only the following categories of information:

> (A) An individual's first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted:
>
> > (i) Social Security Number.
> >
> > (ii) Driver's license number, California identification card number, tax identification number, passport number, military identification number, or other unique identification number issued on a government document commonly used to verify the identity of a specific individual.
> >
> > (iii) Account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account.
> >
> > (iv) Medical information.
> >
> > (v) Health Information.

> (vi) Unique biometric data generated from measurements or technical analysis of human body characteristics, such as a fingerprint, retina, or iris image, used to authenticate a specific individual. Unique biometric data does not include a physical or digital photograph, unless used or stored for facial recognition purposes.
>
> (vii) Genetic data.
>
> (B) A username or email address in combination with a password or security question and answer that would permit access to an online account.

Here, Plaintiff's CCPA claim fails for two reasons. ***First***, Plaintiff has not alleged that the information U.S. Bank allegedly disclosed to Meta meets the narrow definition of "personal information" under the CCPA. Simply alleging that U.S. Bank disclosed his "financial and personal information" (FAC ¶ 168) is not sufficient. *See Gardiner v. Walmart Inc.*, No. 20-CV-04618-JSW, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) (dismissing the plaintiff's CCPA claim where the plaintiff merely alleged that his "financial account information" was disclosed).

***Second***, Plaintiff fails to allege that Meta acquired his personal information due to U.S. Bank's failure "to implement or maintain reasonable security procedures." Cal. Civ. Code § 1798.150. Plaintiff does not allege, for example, that Meta circumvented U.S. Bank's security protocols to access his information. *See In re Sequoia Benefits & Ins. Data Breach Litig.*, No. 22-CV-08217-RFL, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024) (explaining that a CCPA "violation is plausible where the complaint alleges that a defendant's lax security allowed unauthorized users to view, use, manipulate, exfiltrate,

and steal" the plaintiffs' personal information (cleaned up)). Rather, Plaintiff alleges that U.S. Bank voluntarily disclosed his PIFI to Meta. Courts have held that merely sharing information with a third party is "entirely outside of the reach of the CCPA." *See Danfer-Klaben v. JPMorgan Chase Bank, N.A.*, No. SACV21-262 PSGJ DEX, 2022 WL 3012528, at *7 (C.D. Cal. Jan. 24, 2022) (dismissing CCPA claim because the plaintiffs' allegation that the defendant shared their personal information with third parties for profit failed to allege that the disclosure "was the result of a failure to implement and maintain reasonable security measures"). Thus, U.S. Bank's alleged voluntary disclosure of information to Meta does not amount to a CCPA violation.

#### ***4. Plaintiff's invasion of privacy claim should be dismissed because Plaintiff does not allege an intrusion or an intrusion that was highly offensive***

A cause of action for invasion of privacy (also known as intrusion upon seclusion) is the same under California and Minnesota common law.[6] To state a claim, a plaintiff must allege (1) that the defendant intruded into some matter which the plaintiff had a reasonable expectation of privacy and (2) that the intrusion was highly offensive to a reasonable person. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *Loeffler v. City of Anoka*, 79 F. Supp. 3d 986, 999 (D. Minn. 2015). Plaintiff has failed to allege both elements.

---

6 Plaintiff does not specify whether he is asserting his common-law claims for invasion of privacy, implied contract, or unjust enrichment under California or Minnesota law. As a result, U.S. Bank argues that Plaintiff's claims are insufficient under both states' laws.

***First***, Plaintiff has failed to allege an intrusion. Courts, including courts in this district, hold that when a plaintiff "voluntarily browses" a website, "there is no intrusion when [a] Pixel transmits [] information to Meta." *Okash*, 2024 WL 1285779, at *7 (collecting cases). Indeed, in *Okash*, the court held that because the plaintiff voluntarily visited the defendant's website and provided his data to the website, the defendant "did not intrude upon his seclusion." *Id.*; *see also Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) (holding that no intrusion occurred where the defendant "improperly disclosed data about [the plaintiff] which it properly possessed"); *Nienaber*, 2024 WL 2133709, at *9 ("Because Plaintiff voluntarily shared her information with Defendant, there was no *intrusion* upon Plaintiff's solitude, seclusion, or private affairs by Defendant."). Here, Plaintiff alleges that after he voluntarily visited the Website and "input personal information" into the site, "U.S. Bank ***disclosed*** to Meta" his "personal and financial information." (FAC ¶¶ 67-69 [emphasis added].) Thus, Plaintiff's claim should be dismissed because he alleges a disclosure, not an intrusion.

***Second***, even if the disclosure of Plaintiff's PIFI to Meta was an intrusion, Plaintiff has not plausibly alleged that it was highly offensive to a reasonable person. Under California and Minnesota law, a plaintiff "must meet a high threshold of offensiveness . . . to have a viable claim for intrusion upon seclusion." *Loeffler*, 2014 WL 4449674, at *26; *Low*, 900 F. Supp. 2d at 1025 (stating that California common law sets "a high bar for an invasion of privacy claim"). Indeed, an intrusion is highly offensive only if it is "sufficiently serious and unwarranted so as to constitute an

egregious breach of the social norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Thus, courts have held that the "disclosure of personal information, including social security numbers" does not amount to a highly offensive intrusion. *Low*, 900 F. Supp. 2d at 1025. Nor does a "conclusory claim that Google collects general information about a user's religion, political affiliation, or sexual preference." *Hammerling*, 615 F. Supp. 3d at 1091.

Here, given that the disclosure of an individual's social security number does not amount to a highly offensive intrusion, Plaintiff's conclusory allegation that U.S. Bank disclosed his undefined PIFI certainly does not constitute a highly offensive intrusion. *See Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (holding that the plaintiff's allegation that the defendant obtained the plaintiff's PII and shared it with third parties for marketing purposes was not "an egregious breach of social norms"). Plaintiff's claim should therefore be dismissed.

#### ***5. Plaintiff's implied contract claim should be dismissed because Plaintiff does not allege a mutual agreement or damages***

A cause of action for implied contract is the same under California and Minnesota law. In both states, the plaintiff must plausibly allege the elements of an express contract "except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008); *Tri-State Bobcat, Inc. v. FINN Corp.*, 338 F. Supp. 3d 971, 982 (D. Minn. 2018). Thus, Plaintiff must allege "(1) the existence of the contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages." *Prostar*

*Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1010 (N.D. Cal. 2018). Here, Plaintiff alleges that U.S. Bank and Plaintiff entered into an implied contract where, in exchange for "receiving services" from U.S. Bank, Plaintiff provided his PIFI, "which [U.S. Bank] agreed to safeguard and not disclose" without Plaintiff's consent. (FAC ¶¶ 194-95.) Plaintiff alleges U.S. Bank breached the parties' contract when it disclosed Plaintiff's PIFI to Meta and that Plaintiff suffered damages as result—"the loss of the benefit of [his] bargain and diminution in value of [his] PIFI." (*Id.* ¶¶ 201-02.) Plaintiff's claim, however, fails for at least two reasons.

***First***, Plaintiff has not alleged any facts demonstrating that U.S. Bank entered into an implied agreement to not disclose Plaintiff's PIFI. Plaintiff misleadingly relies on a paragraph of the Privacy Policy that discusses U.S. Bank's advertisements on third-party websites. (FAC ¶¶ 54, 197 ["Occasionally, you may encounter banner advertisements for our products and services on third-party websites and mobile applications. We use third-party service providers to distribute our advertisements on websites and mobile applications where we have paid to advertise."].) That paragraph, however, does not apply to Plaintiff because Plaintiff does not allege that U.S. Bank collected his information via an advertisement on a third-party site. Rather, Plaintiff's claim is premised on his use of *U.S. Bank's website*. As discussed *supra* in section III.b.2, the portions of the Privacy Policy and California Policy that apply to Plaintiff's use of U.S. Bank's website affirmatively state that U.S. Bank may share Plaintiff's information with third parties like Meta. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 911 (8th Cir. 2016)

(dismissing breach of contract claim based on alleged disclosure of PII to Facebook because the defendant never promised not to disclose the plaintiff's PII to Facebook).

Even if the Privacy Policy did promise to not disclose Plaintiff's PIFI, Plaintiff does not allege how the Privacy Policy evinces a mutual agreement between himself and U.S. Bank. *Retired Emps. Ass'n of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (explaining that an implied contract arises "from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words"). Plaintiff does not allege he read the Privacy Policy or that he relied on the Privacy Policy when he provided his PIFI to U.S. Bank. Accordingly, Plaintiff has not alleged the existence of an implied contract.

***Second***, even if Plaintiff could allege the existence of an implied contract, Plaintiff has not plausibly alleged damages resulting from U.S. Bank's purported breach. Plaintiff alleges that he lost the benefit of the bargain and that his PIFI diminished in value. (FAC ¶ 202.) But these allegations are merely legal conclusions that are "devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678. Plaintiff does not explain, for example, how his PIFI lost value or what the "benefit of the bargain" was, let alone how he lost such a benefit from U.S. Bank's alleged breach. As a result, Plaintiff has failed to allege an essential element of his breach of implied contract claim. His claim should therefore be dismissed. *See B.K.*, 721 F. Supp. 3d at 1068 (dismissing implied contract claim where the plaintiffs did not allege how they were damaged).

### *6. Plaintiff's unjust enrichment claim should be dismissed for multiple reasons*

Plaintiff's unjust enrichment claim is contingent on his other claims. (*See* FAC ¶ 208 [alleging U.S. Bank was unjustly enriched based on "the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint"].) Therefore, if the Court dismisses Plaintiff's other claims, it must also dismiss his claim for unjust enrichment. But even if the Court does not dismiss Plaintiff's other claims, his claim for unjust enrichment fails for three additional reasons.

***First***, California courts have held that "there is no cause of action in California labeled 'unjust enrichment.'" *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206 (2023). Thus, if the Court applies California common law, Plaintiff's unjust enrichment claim should be dismissed.

***Second***, under Minnesota law, an unjust enrichment claim is "premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012), *superseded by statute on other grounds*, Minn. Stat. § 645.16. Thus, if the Court agrees that Plaintiff has failed to allege that an implied contract existed, Plaintiff's unjust enrichment claim fails.

***Third***, to allege unjust enrichment, "a plaintiff must show that the defendant received and unjustly retained a benefit *at the plaintiff's expense*." *See Katz-Lacabe v. Oracle Am.*, Inc., 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (emphasis added); *Hall v. Centerspace, LP*, No. 22-CV-2028 (KMM/DJF), 2023 WL 3435100, at *6 (D. Minn.

May 12, 2023) (dismissing the plaintiff's unjust enrichment claim because the plaintiff's PII was not a benefit conferred upon the defendant). Here, Plaintiff has not alleged any facts demonstrating that he expended his own resources when applying for a credit card on the Website; nor has he alleged facts showing how his PIFI has decreased in value. Accordingly, he has not shown that U.S. Bank was enriched at his expense. For this additional reason, Plaintiff's unjust enrichment claim should be dismissed.

## IV. CONCLUSION

Plaintiff asserts seven causes of action based on a single visit to U.S. Bank's website. Plaintiff does not allege the relevant details of his visit, such as when he visited, what pages he browsed, or what information he shared. Nor does he plead the necessary elements for each of his claims, even after U.S. Bank identified each of Plaintiff's pleading deficiencies in its original motion to dismiss. That Plaintiff still cannot cure such deficiencies demonstrates the futility of his claims. Accordingly, the FAC should be dismissed with prejudice.

Date: March 3, 2025

Respectfully submitted,

By: */s/ Jay T. Ramsey*

Todd A. Noteboom (#0240047)
William D. Thomson (#0396743)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
todd.noteboom@stinson.com
william.thomson@stinson.com

Jay T. Ramsey (admitted *pro hac vice*)
jramsey@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON**
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700