**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHRISTOPHER BUTLER, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANCORP,<br><br>Defendant. | Case No. 0:24-cv-03700<br><br>Hon. Jeffrey M. Bryan<br><br>**DEFENDANT U.S. BANCORP'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE HE DOES NOT ALLEGE FACTS SUPPORTING HIS CLAIMS ..... 2

III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL, INDEPENDENT REASONS ..... 3

A. Plaintiff's ECPA Claim Should Be Dismissed ..... 3

1. The party exception applies to U.S. Bank ..... 3

2. Plaintiff does not allege that U.S. Bank intercepted the contents of his communications ..... 6

B. Plaintiff's UCL Claims Should Be Dismissed ..... 8

1. Plaintiff does not have standing to assert a UCL claim ..... 8

2. U.S. Bank has not violated the GLBA ..... 11

C. Plaintiff's CCPA Claim Should Be Dismissed ..... 12

1. The alleged information that U.S. Bank disclosed to Meta does not meet the definition of "personal information" ..... 12

2. Plaintiff has not alleged an unauthorized disclosure as a result of inadequate security procedures ..... 14

D. Plaintiff's Invasion Of Privacy Claim Should Be Dismissed ..... 15

E. Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed ..... 17

F. Plaintiff's Unjust Enrichment Claim Should Be Dismissed ..... 19

IV. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Futures v. Limitless Trading Co., LLC*
2021 WL 5238588 (C.D. Cal. Oct. 6, 2021) ........ 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) ........ 19

*B.K. v. Eisenhower Medical Ctr.*
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ........ 2

*Cousin v. Sharp Healthcare*
681 F. Supp. 3d 1117 (S.D. Cal. 2023) ........ 2, 3

*Dias v. Spartan Micro, Inc.*
2022 WL 17216820 (C.D. Cal. Sept. 14, 2022) ........ 19

*Diversified Water Diversion, Inc. v. Hogenson Props., Ltd.*
2015 WL 2185201 (Minn. Ct. App. May 11, 2015) ........ 20

*Doe v. MKS Instruments, Inc.*
2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) ........ 15, 18

*Doe v. Regents of University of California*
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 17

*In re Facebook, Inc. Internet Tracking Litig.*
956 F.3d 589 (9th Cir. 2020) ........ 15

*In re Google Inc.*
806 F.3d 125 (3d Cir. 2015) ........ 5, 6

*In re Group Health Plan Litigation*
709 F. Supp. 3d 707 (D. Minn. 2023) ........ passim

*Hall v. Centerspace, LP*
2023 WL 3435100 (D. Minn. May 12, 2023) ........ 18

*Hollywood Dairy, Inc. v. Timmer*
411 N.W.2d 258 (Minn. Ct. App. 1987) ........ 20

*Kwikset Corp. v. Superior Ct.*
51 Cal. 4th 310 (2011) ........ 10

*Mekhail v. N. Mem'l Health Care*
726 F. Supp. 3d 916 (D. Minn. 2024) .................... 16

*Nienaber v. Overlake Hosp. Med. Ctr.*
2025 WL 692097 (W.D. Wash. Mar. 4, 2025) .................... 16

*Nienaber v. Overlake Hospital Medical Ctr.*
2024 WL 2133709 (W.D. Wash. May 13, 2024) .................... 2

*Okash v. Essentia Health*
2024 WL 1285779 (D. Minn. Mar. 26, 2024) .................... 4, 6, 16

*Online Privacy and Security*
available at https://www.usbank.com/about-us-bank/privacy/security.html .................... 7

*Planned Parenthood Fed'n of Am., Inc. v. Newman*
51 F.4th 1125 (9th Cir. 2022) .................... 5

*R.C. v. Walgreen Co.*
733 F. Supp. 3d 876 (C.D. Cal. 2024) .................... 16

*In re Sequoia Benefits & Ins. Data Breach Litig.*
2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) .................... 14

*Shah v. Capital One Financial Corporation*
2025 WL 714252 (N.D. Cal. Mar. 3, 2025) .................... 6, 17, 18

*Sussman v. American Broadcasting Companies, Inc.*
186 F.3d 1200 (9th Cir. 1999) .................... 5, 6

*United States v. Lora-Andres*
844 F.3d 781 (8th Cir. 2016) .................... 4

*Walker v. GEICO Gen. Ins. Co.*
2007 WL 499660 (E.D. Cal. Feb. 12, 2007) .................... 19

**Statutes**

18 U.S.C. § 2510(8) .................... 6

18 U.S.C. § 2511(2)(d) .................... 3, 4, 5

Cal. Civ. Code § 1798.150 .................... 12, 13, 15

Cal. Civ. Code § 1798.81.5 .................... 12, 13, 14

Civil Code § 1798.140 .................... 12, 13

## I. INTRODUCTION

The Court should grant Defendant U.S. Bancorp's ("U.S. Bank") Motion to Dismiss. As set forth in the Motion, Plaintiff's vague assertions that his "PIFI" was collected by the Meta Pixel and shared with Meta while applying for a credit card on U.S. Bank's website fail to establish any plausible claim for relief. Beyond his lack of factual allegations, each of Plaintiff's seven causes of action fail for independent reasons.

In the Opposition, Plaintiff attempts to distract from these deficiencies by repeatedly misconstruing U.S. Bank's Privacy Policy. He incorrectly argues that the Privacy Policy permits the Meta Pixel to collect extensive personal information from website visitors. This, of course, is not true. The Privacy Policy states that online tracking technologies, like the Meta Pixel, only collect limited, non-personally identifiable information. Setting aside Plaintiff's misrepresentations of the Privacy Policy, Plaintiff does not meaningfully counter U.S. Bank's arguments for dismissing his claims. Instead, he misconstrues caselaw and misquotes statutory language to bolster his arguments.

Ultimately, Plaintiff has had two chances to present plausible claims for relief. Nothing in his Opposition indicates that another opportunity to amend will cure his pleading deficiencies. Therefore, the Court should dismiss the First Amended Complaint with prejudice.

## II. ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE HE DOES NOT ALLEGE FACTS SUPPORTING HIS CLAIMS

As set forth in the Motion, Plaintiff's allegations in the First Amended Complaint are too vague to state any plausible claim for relief. (Mot. at 4-6.) Plaintiff alleges that his "PIFI" was collected by the Meta Pixel and shared with Meta while he applied for a credit card on U.S. Bank's website, www.usbank.com (the "Website"). But Plaintiff does not specify what "PIFI" even is or which, if any, of his PIFI was collected by the Meta Pixel. (*Id.* at 4-5.) He also does not allege other basic facts, such as what information he entered into the Website when applying for a credit card or even when he visited the Website. (*Id.* at 4.) At least three district courts have dismissed similarly vague complaints based on a defendant's alleged use of the Meta Pixel. *See Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124 (S.D. Cal. 2023); *B.K. v. Eisenhower Medical Ctr.*, 721 F. Supp. 3d 1056, 1064 (C.D. Cal. 2024), *on reconsideration in part*, 2024 WL 2037404 (C.D. Cal. Apr. 11, 2024); *Nienaber v. Overlake Hospital Medical Ctr.*, 2024 WL 2133709, at *5 (W.D. Wash. May 13, 2024).

In the Opposition, Plaintiff argues that U.S. Bank cannot, on the one hand, assert that it does not have notice regarding what information the Meta Pixel collected from Plaintiff, but, on the other hand, claim that its privacy policies disclose what information the Meta Pixel collects. (Opp. at 4-7.) Plaintiff also argues that he is not required to allege what information the Meta Pixel collected from him because that information is in the sole possession of U.S. Bank. (*Id.* at 7-8.) Plaintiff misconstrues U.S. Bank's argument. First, even though, as Plaintiff now admits, U.S. Bank's privacy policies

disclose the information that the Meta Pixel collects, that does not absolve Plaintiff from alleging facts describing what information he believes the Meta Pixel collected from him. *See Cousin*, 681 F. Supp. 3d at 1124 (holding that plaintiffs must allege "what personal or health information" the Meta Pixel collected from them). Second, U.S. Bank is not arguing that Plaintiff must allege facts solely within U.S. Bank's possession. It is arguing the exact opposite—that Plaintiff must allege facts that are solely within *his possession*, such as when *he visited* the Website, what pages *he browsed* on the site, and what information *he entered* when applying for a credit card. (Mot. at 4-6.) Accordingly, because Plaintiff has not alleged these basic facts, the First Amended Complaint should be dismissed.[1]

## III. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR ADDITIONAL, INDEPENDENT REASONS

### A. Plaintiff's ECPA Claim Should Be Dismissed

#### *1. The party exception applies to U.S. Bank*

As set forth in the Motion, Plaintiff's ECPA claim should be dismissed for two reasons. First, the party exception applies. (Mot. at 7.) Under the ECPA, if a party to a communication consents to an interception of the communication, that party is immune from liability. *See* 18 U.S.C. § 2511(2)(d). Here, U.S. Bank was a party to its communication with Plaintiff (FAC ¶¶ 26-27; Opp. at 9), and it consented to Meta intercepting Plaintiff's communications by installing the Meta Pixel on its Website (FAC

[1] Plaintiff misconstrues U.S. Bank's Privacy Policy by insinuating that it states that the Meta Pixel collects, among other things, names, email addresses, social security numbers, and driver's license numbers from website visitors. (Opp. at 4-7.) As explained *infra* in Section III.A.2, the Privacy Policy does not state that.

¶¶ 26-27). U.S. Bank is thus not liable. *See Okash v. Essentia Health*, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) ("[A]ny possible interception by Meta was not 'in violation of [the ECPA]' because [defendant] consented to Meta's interception.").[2] In the Opposition, Plaintiff asserts two arguments. Neither are persuasive.

First, Plaintiff argues that for the party exception to apply, U.S. Bank must have been "acting under color of law." (Opp. at 9-10.) Courts interpret the phrase "acting under color of law" to mean "acting at the direction of law enforcement" or the government. *United States v. Lora-Andres*, 844 F.3d 781, 785 (8th Cir. 2016). Plaintiff's argument is without merit because the ECPA does not require a person to be acting at the direction of law enforcement for the party exception to apply. Indeed, the statute states that "[i]t shall not be unlawful . . . for a person ***not*** acting under color of law to intercept a . . . electronic communication . . . where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d) (emphasis added). Here, U.S. Bank was a party to the communication with Plaintiff and consented to Meta's interception, so the party exception applies even though U.S. Bank was not also "acting under color of law."

Second, Plaintiff argues that the party exception does not apply because U.S. Bank utilized the Meta Pixel for a tortious purpose—to invade Plaintiff's privacy and violate the California Financial Information Privacy Act ("FIPA"). (Opp. at 11.) Unlike

---

[2] Plaintiff argues that *Okash* "is inapposite" because, unlike this case, "the court addressed passive web analytics." (Opp. at 10.) Not so. As in this case, the plaintiff in *Okash* alleged that the defendant installed the Meta Pixel on its website and intercepted the plaintiff's activity on the website. 2024 WL 1285779, at *1.

Plaintiff's original complaint, which specifically alleged that the crime-tort exception applied, the First Amended Complaint does not include any allegations regarding the crime-tort exception. (Mot. at 7.) Accordingly, Plaintiff's ECPA claim should be dismissed for this reason alone. Nonetheless, even if Plaintiff had alleged that the crime-tort exception applied based on an invasion of privacy and violation of FIPA, the crime-tort exception is still inapplicable. To fall within the exception, the "criminal or tortious purpose must be ***separate and independent*** from the [interception]"—meaning that the interception itself cannot establish the criminal or tortious purpose. *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (emphasis added). Put another way, there must be some other crime afoot, distinct from the alleged interception itself, to invoke the ECPA exception.[3] *See Sussman v. American Broadcasting Companies, Inc.*, 186 F.3d 1200, 1203 (9th Cir. 1999) (holding that even though the defendant's recording "may well have been a tortious invasion of privacy under state law," the crime-tort exception did not apply because the defendant did not have "an illegal or tortious purpose" separate and apart from making the tape); *see also In re Google Inc.*, 806 F.3d 125, 145 (3d Cir. 2015) ("[A]ll authority of which we are aware indicates that the criminal or tortious purpose contemplated by § 2511(2)(d) are acts secondary to the acquisition of the communication involving tortious or criminal use of the interceptions' fruits.").

---

[3] This makes perfect sense. If interception without the consent of one party were enough, standing alone, to trigger the exception, the exception would swallow the ECPA's rule that it is a one-party consent statute.

Here, Plaintiff does not allege that U.S. Bank committed an independent, secondary act—separate from the interception—that invaded his privacy or violated FIPA. (*See* FAC ¶¶ 113, 184, 228 [alleging that U.S. Bank violated FIPA and invaded Plaintiff's privacy by permitting Meta to intercept Plaintiff's information].) Accordingly, the crime-tort exception does not apply. *See Okash*, 2024 WL 1275779, at *4 (holding that the crime-tort exception did not apply "because neither the alleged HIPAA nor privacy violations were independent of [the Meta Pixel's] interception").[4]

### *2. Plaintiff does not allege that U.S. Bank intercepted the contents of his communications*

As set forth in the Motion, Plaintiff has not plausibly alleged that the Meta Pixel intercepted "contents" of his communication. (Mot. at 7.) "Contents" are the "substance, purport, or meaning" of a communication. 18 U.S.C. § 2510(8). Plaintiff has not specified what information the Meta Pixel collects; thus, he has necessarily not alleged that such information constitutes the contents of a communication. (*Id.* at 7-8.)

---

[4] *Shah v. Capital One Financial Corporation*, 2025 WL 714252 (N.D. Cal. Mar. 3, 2025) and *In re Group Health Plan Litigation*, 709 F. Supp. 3d 707 (D. Minn. 2023) are distinguishable. In both cases, the tortious act was not the interception, but acts that occurred *after* the interception. *See Shah*, 2025 WL 714252, at *12 (explaining that the interception *"resulted* in tortious acts" (emphasis added)); *Group Health Plan*, 709 F. Supp. 3d at 719 (explaining that "the *use* of patient data" *after* the interception had occurred was tortious (emphasis added)). In contrast, here, Plaintiff alleges that the relevant tortious act was the interception itself, not conduct that occurred *after* the interception. (FAC ¶ 228 [alleging that U.S. Bank "invad[ed] Plaintiff's privacy via the Pixel tracking code"].) Thus, Plaintiff has not alleged a tortious act separate and independent of Meta's alleged interception. To the extent *Shah* or *Group Health Plan* can be interpreted to hold that the interception itself can be the relevant tortious act, they are at odds with the weight of authority and should not be followed. *See Sussman*, 186 F.3d at 1203; *In re Google Inc.*, 806 F.3d at 145.

In the Opposition, Plaintiff argues that the contents of his communications were intercepted because U.S. Bank "has admitted" in its Privacy Policy that such communications include "name, postal address, email address, telephone number, Social Security number, date of birth or account information." (Opp. at 11.) This argument fails for two reasons. First, Plaintiff never alleges this in the FAC. Indeed, Plaintiff does not even attempt to cite a paragraph in the First Amended Complaint in support of his argument. (Opp. at 11-12.) Second, Plaintiff misconstrues U.S. Bank's Privacy Policy. While the Privacy Policy states that U.S. Bank may collect a person's "name, postal address, email address, telephone number, Social Security number, date of birth or account information," it never states that it collects this information by using an online tracking technology, like the Meta Pixel, or otherwise discloses this information to third parties like Meta. *See Online Privacy and Security*, available at https://www.usbank.com/about-us-bank/privacy/security.html.[5] Indeed, the Privacy Policy states that information collected by online tracking technologies include things like "information about [a website visitor's] internet browser," not a person's name or social security number. *Id.* Thus, Plaintiff's assertion that the Meta Pixel collects a person's name, social security number, and similar information is incorrect. Plaintiff has therefore not alleged that the "contents" of his communications were intercepted.

[5] For the same reasons, Plaintiff's assertions regarding the California Privacy Center Policy are inaccurate—that policy also does not state that the Meta Pixel collects information like a user's social security number, and Plaintiff does not allege that in his First Amended Complaint.

### B. <u>Plaintiff's UCL Claims Should Be Dismissed</u>

#### ***1. Plaintiff does not have standing to assert a UCL claim***

As set forth in the Motion, to establish standing under the UCL, a plaintiff must demonstrate that he has "suffered injury in fact and has ***lost money or property*** as a result of the unfair competition." (Mot. at 9-10 [citing Cal. Bus. Prof. Code § 17204 (emphasis added)].) Standing under the UCL is thus stricter than the traditional federal standing requirement, and a plaintiff's allegations that his personal information was disclosed—without more—is insufficient. (*Id*. at 9-11.) Here, Plaintiff fails to adequately plead in the First Amended Complaint a loss of money or property. As such, his UCL claim must be dismissed.

Plaintiff's reliance on the district court's decision in *Sequeira* to argue that he has met the UCL's heightened standing requirement is misplaced. (Opp. at 13-14.) There, three separate plaintiffs—Nelson Sequeira, Ismael Cordero, and Orsay Alegria—sued various financial institutions, alleging that they violated FIPA by sharing plaintiffs' private financial and personal records with law enforcement agencies, and that this constituted an unlawful business practice under the UCL. In assessing whether each plaintiff had satisfied the exacting standing requirement under the UCL, the *Sequeira* court held:

> Here, Plaintiffs Sequeira and Cordero satisfy that burden by alleging that, had they known of Western Union's alleged violations of the Cal. FIPA, they "would not have paid Western Union to process the transaction[s], and would instead have searched for alternative ways of sending [their] money." FAC ¶¶ 53, 55. ***However, Plaintiff Alegria, the only plaintiff alleged to have used Continental, Viamericas, or DolEx's services, does not allege any such economic injury. Cf. FAC ¶ 54. Instead, Plaintiff Alegria only alleges that he "feels distress and that his privacy has been violated because of the companies' sharing of his personal information with law enforcement." Id.***

722 F. Supp. 3d at 1008 (emphasis added).

In his Opposition, Plaintiff goes to great lengths to convince the Court that, like plaintiffs Sequeira and Cordero, he has sufficiently plead a loss of money or property. Plaintiff claims that he has "been a customer of U.S. Bank for years" (Opp. at 14), that "[i]n that time, he has been forced to pay multiple fees to U.S. Bank for various transactions" (*id.*), and that—just as with Sequeira and Cordero—"[h]ad he known that U.S. Bank was transferring his financial information to Meta via the Pixel, he would not have continued to bank with U.S. Bank and instead would have searched for alternative banks." (*Id.*) Plaintiff does not allege any of this in the First Amended Complaint,[6] and

[6] *Compare* Opp. at 14 ("Plaintiff has been a ***customer*** of U.S. Bank ***for years***." (emphasis added))*, with* FAC ¶ 13 ("Plaintiff is a user of U.S. Bank's website . . . .) *and* FAC ¶ 63 ("Plaintiff Christopher Butler is a U.S. Bank consumer . . . ."); *Compare* Opp. at 14 ("In that time, he has been forced to pay multiple ***fees*** to U.S. Bank for various ***transactions***." (emphasis added))*, with* FAC ¶ 194 ("As a condition of utilizing Defendant's Website and receiving services from Defendant's financial facilities and professionals, Plaintiff and Class Members provided their PIFI and compensation for their financial services."); *Compare* Opp. at 14 ("Had he known that U.S. Bank was transferring his financial information to Meta via the Pixel, he would not have continued ***to bank*** with U.S. Bank and instead would have ***searched for alternative banks***." (emphasis added))*, with* FAC ¶ 76 ("Had Plaintiff known that U.S. Bank was sharing their personal information and

U.S. Bank has been unable to ascertain whether he is even a U.S. Bank customer at all. Even then, Plaintiff's allegations still fail to plead the requisite loss of money or property. *Compare Sequeira*, 722 F. Supp. 3d at 1008 ("Here, Plaintiffs Sequeira and Cordero satisfy that burden by alleging that, had they known of Western Union's alleged violations of the Cal. FIPA, they 'would not have ***paid*** Western Union to process the transaction[s], and would instead have searched for alternative ways of sending [their] money."' (emphasis added)), *with* Opp. at 14 ("Had Plaintiff known that U.S. Bank was sharing their personal information and browsing activity with Facebook, they would not have ***interacted with U.S. Bank's Website or provided any personal information***." (emphasis added)).[7] What's more, even if the Court were to accept as true the allegation made in Plaintiff's Opposition—again not ever actually alleged in the First Amended Complaint—that he "has been forced to pay multiple fees to U.S. Bank for various transactions," Plaintiff fails to allege that any of these fees were made in connection with the relevant transaction giving rise to his UCL claim in the First Amended Complaint—that is, his application for a credit card. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) ("To satisfy the narrower standing requirements imposed by Proposition 64, a party must . . . show that that economic injury was the result of, i.e., caused by, the

---

browsing activity with Facebook, they would not have interacted with U.S. Bank's website or provided any personal information.").

[7] Plaintiff's appeal to the district court's decision in *Low* is equally unavailing. In *Low*, one of the plaintiffs was found to satisfy the first prong of the UCL's standing requirement (i.e., economic injury) where he alleged ***in the Complaint***, that he "***paid $24.99***" to the defendant for a "LinkedIn subscription." 900 F. Supp. 2d at 1026 (emphasis added). Plaintiff makes no such allegation in this case.

unfair business practice or false advertising ***that is the gravamen of the claim***." (emphasis added)). Just as with plaintiff Alegria in *Sequeira*, Plaintiff Butler has alleged no loss of money or property as a result of the unlawful conduct alleged in the First Amended Complaint, and his UCL claim must be dismissed.

***2. U.S. Bank has not violated the GLBA***

As set forth in the Motion, the GLBA prohibits an institution from disclosing the nonpublic personal information of a consumer unless the institution provides the consumer with "an initial notice" and an "opt out notice," and the consumer does not opt out after a reasonable opportunity to do so. (Mot. at 12-13.) Here, Plaintiff was put on notice, in both the Privacy Policy and the California Privacy Center Policy, regarding what information U.S. Bank collects, who the information is shared with, and how a user can opt out of having their information shared. Indeed, Plaintiff cites extensively to these sections in the Opposition. (Opp. at 5-7.) Despite this clear and conspicuous notice, Plaintiff continued to use the Website and makes no allegations that he ever attempted to opt out of the sharing of the information disclosed in the policies. As such, U.S. Bank's conduct comports with the GLBA and Plaintiff's claim must be dismissed.

In responding to this argument in the Opposition, Plaintiff does the very thing he accuses U.S. Bank of—speaking out of both sides of his mouth. Plaintiff argues that U.S. Bank "need not look any further than the Privacy Policy" to know what information it collects and distributes (Opp. at 5); that the California Privacy Center Policy is "even more specific" (*id.* at 6); and that U.S. Bank readily identifies the "information it claims to collect" and "***where*** such information is obtained." (*Id.* [emphasis in original].)

Plaintiff then, confusingly, makes an about-face, arguing that both the Privacy Policy and California Privacy Center Policy are not "reasonably understandable" (*id.* at 16); that they "use explanations that are imprecise" (*id.*); and that these explanations are "readily subject to different interpretations." (*Id.*) Plaintiff cannot have it both ways. He cannot argue, on the one hand, that he is excused from pleading facts about what specific data was collected because the privacy policies so clearly identify as much, and on the other hand, argue that the policies are so impermissibly vague and ambiguous as to not adequately put individuals on notice of the same. The Privacy Policy and the California Privacy Center Policy provide users with a sufficiently understandable "initial notice" and "opt out notice." As such, Plaintiff's UCL claim premised on a violation of the GLBA cannot stand.

## C. Plaintiff's CCPA Claim Should Be Dismissed

### *1. The alleged information that U.S. Bank disclosed to Meta does not meet the definition of "personal information"*

As set forth in the Motion, a plaintiff may assert a claim under the CCPA if the plaintiff's (1) "personal information" (2) was subject to an unauthorized disclosure (3) as a result of the defendant's failure to implement reasonable security measures. Cal. Civ. Code § 1798.150. Critically, section 1798.150 of the CCPA uses the definition of "personal information" in California Civil Code section 1798.81.5—it does not use the definition of "personal information" under the CCPA (Civil Code § 1798.140). The statute states in full:

> Any consumer whose nonencrypted and nonredacted personal information, ***as defined in subparagraph (A) of paragraph (1) of subdivision (d) of Section 1798.81.5***, or whose email address in combination with a password or security question and answer that would permit access to the account is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action . . . .

Cal. Civ. Code § 1798.150 (emphasis added). As explained in the Motion, the definition of personal information under section 1798.81.5 is considerably narrower, applying only when an individual's "first name or first initial and the individual's last name" is disclosed with another data element, such as an individual's social security number, driver's license, or credit card number. (Mot. at 15-16.) Plaintiff's allegation that U.S. Bank disclosed his "financial and personal information" does not meet the statute's narrow definition of "personal information." (*Id.* at 16.)

In the Opposition, Plaintiff argues that U.S. Bank admits in its Privacy Policy that it collects "nearly every category of information" listed under the definition of "personal information" in California Civil Code section 1798.140. (Opp. at 18-19.) Plaintiff's argument fails for multiple reasons. First, Plaintiff cites the wrong statute, Civil Code section 1798.140, in arguing that his allegations meet the definition of "personal information." (*Id.* at 17-18.) Under the correct statute, section 1798.81.5, Plaintiff's allegation that U.S. Bank disclosed "names, browser and Facebook identities, IP addresses, and sensitive onboarding data" (Opp. at 19) does not meet the definition of "personal information." Second, Plaintiff again misconstrues the Privacy Policy. As

explained, the Privacy Policy does not state that the Meta Pixel collects information like an individual's name or social security number, and Plaintiff doesn't even allege as much in his First Amended Complaint. Accordingly, Plaintiff's claim fails because he does not allege that any of his "personal information," as defined under section 1798.81.5, was disclosed to Meta.

#### 2. *Plaintiff has not alleged an unauthorized disclosure as a result of inadequate security procedures*

As set forth in the Motion, Plaintiff's CCPA claim also fails because he does not allege that his information was subject to an unauthorized disclosure as a result of U.S. Bank's inadequate security measures. (Mot. at 16-17.) Rather, Plaintiff alleges that U.S. Bank willingly shared his information with Meta. (FAC ¶¶ 5-6, 68-69.)

In the Opposition, Plaintiff argues that implementing the Meta Pixel on U.S. Bank's Website "constituted a failure to implement reasonable security procedures." (Opp. at 19.) This argument fails for two reasons. First, courts hold that a failure to maintain security measures occurs when a defendant does not have adequate procedures in place to prevent a data breach or cyber-attack. *See In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024). Here, Plaintiff does not allege that the Meta Pixel overcame U.S. Bank's "lax security" to obtain his information. *Id.* Second, even if the Meta Pixel constituted an inadequate security measure, Plaintiff alleges that U.S. Bank authorized the disclosure of his information to

Meta. (FAC ¶¶ 5-6.) Thus, there was no "unauthorized" disclosure. Cal. Civ. Code § 1798.150. For these additional reasons, Plaintiff's CCPA claim fails.[8]

### D. Plaintiff's Invasion Of Privacy Claim Should Be Dismissed

As set forth in the Motion, Plaintiff has failed to allege an invasion of privacy claim for two reasons. First, Plaintiff does not allege an intrusion; he alleges a *disclosure* of his information to Meta. (Mot. at 18.) Second, he does not plausibly allege highly offensive conduct. The disclosure of undefined PIFI does not amount to "an egregious breach of social norms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020). Indeed, courts have held that even the disclosure of "social security numbers" does not amount to highly offensive conduct. *See Low*, 900 F. Supp. 2d at 1025.

In the Opposition, Plaintiff first argues that an intrusion occurs merely when a plaintiff browses a website and a plaintiff's browsing activity is *disclosed* to a third party. (Opp. at 21.) Plaintiff relies on *Group Health Plan*, which held that an intrusion occurred when the Facebook Pixel intercepted a plaintiff's communication and shared the communication with third parties. 709 F. Supp. 3d at 714. But, as explained, the disclosure or sharing of information is not the same thing as an intrusion. The weight of authority in this district recognizes this difference and holds that disclosure of

---

[8] *Doe v. MKS Instruments, Inc.*, 2023 WL 9421115 (C.D. Cal. Nov. 3, 2023) is distinguishable. There, the plaintiff alleged that "an unauthorized person gained access to [the defendant's] computer network through a ransomware attack," causing the unauthorized disclosure of personal information. *Id.* at *1. Plaintiff does not allege that anything similar occurred in this case.

information to a third party, like Meta, does not constitute an intrusion. *See Okash*, 2024 WL 1285779, at *7 (dismissing a plaintiff's invasion of privacy claim because "there is no intrusion when a [a] Pixel transmits [] information to Meta"); *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 922 (D. Minn. 2024) (dismissing invasion of privacy claim because "an intrusion by [the defendant] cannot be plausibly alleged where [the plaintiff] concedes that it was Meta (or Meta's Pixel), rather than [the defendant], that made the interception"). Moreover, at least one court has declined to follow *Group Health Plan* because a disclosure of information is not the same as an intrusion. *See Nienaber v. Overlake Hosp. Med. Ctr.*, 2025 WL 692097, at *9 (W.D. Wash. Mar. 4, 2025). Accordingly, because Plaintiff has not alleged an intrusion, his claim should be dismissed.[9]

Next, Plaintiff argues that the disclosure of financial information is highly offensive to a reasonable person. (Opp. at 21-22.) Plaintiff again relies on *R.C.* and *Group Health Plan*. But those cases are distinguishable because they involved the disclosure of a plaintiff's health information. *See R.C.*, 733 F. Supp. 3d at 893 (holding that disclosing to Meta that a plaintiff purchased "sensitive healthcare products (Monistat and diabetes kit) related to specific health conditions (yeast infection and diabetes)" was highly offensive); *Group Health Plan*, 709 F. Supp. 3d at 714 (holding that the disclosure

[9] Plaintiff also relies on *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876 (C.D. Cal. 2024), but the district court in that case did not consider whether disclosure of a website visitor's information to a third party constitutes an intrusion. Indeed, the cited portion of the decision in the Opposition discusses only whether such disclosure is highly offensive to a reasonable person. *Id.* at 892.

to Meta of a plaintiff's "sensitive health information, including communications about medical records and diagnoses" was highly offensive). Courts have recognized that the disclosure of financial information does not rise to the same level as health information, and thus the disclosure of financial information is not highly offensive. *See Shah*, 2025 WL 714252 at *7 (dismissing plaintiffs' invasion of privacy claim because the disclosure of plaintiffs' "personal information in the form of . . . bank account information, and their eligibility for preapproval or approval for a credit card . . . does not rise to the level of an 'egregious breach of social norms'"); *Low*, 900 F. Supp. 2d at 1025 (disclosure of social security numbers was not highly offensive). Accordingly, Plaintiff has failed to state a claim because the disclosure of financial information is not highly offensive.

**E. <u>Plaintiff's Breach Of Implied Contract Claim Should Be Dismissed</u>**

As set forth in the Motion, Plaintiff's breach of implied contract claim fails for two reasons. First, Plaintiff has not alleged an implied agreement between U.S. Bank and Plaintiff. (Mot. at 20.) Plaintiff alleges U.S. Bank's Privacy Policy is the basis for such an agreement, but Plaintiff never alleges that he read or relied on the Privacy Policy before applying for a credit card on U.S. Bank's Website. (*Id.* at 21.) Second, Plaintiff has not plausibly alleged damages. (*Id.*)

In the Opposition, Plaintiff asserts two arguments in response. First, Plaintiff argues that his allegations are analogous to three district court cases where an implied agreement existed between a plaintiff and a defendant. (Opp. at 23-27.) None of these cases, however, are similar to what Plaintiff alleges in this case. In *Group Health Plan* and *Doe v. Regents of University of California*, 672 F. Supp. 3d 813 (N.D. Cal. 2023), the

defendant promised in its privacy policy to keep sensitive information confidential but nonetheless disclosed such information to a third party. *See Group Health Plan*, 709 F. Supp. 3d at 714; *Doe*, 672 F. Supp. 2d at 821. Plaintiff does not allege a similar promise in the First Amended Complaint. As explained in the Motion, the portion of the Privacy Policy that Plaintiff does cite applies to advertisements on third-party websites. (FAC ¶ 197.) But that portion does not apply to Plaintiff because Plaintiff does not allege that he clicked on a U.S. Bank advertisement on a third-party site. (Mot. at 20.) In *Hall v. Centerspace, LP*, 2023 WL 3435100 (D. Minn. May 12, 2023), the court held that "requiring someone to provide a Social Security number and other sensitive personal information as part of a transaction carries with it the recipient's implied agreement to reasonably safeguard it." *Id.* at *5. Plaintiff does not allege that U.S. Bank required him to disclose his Social Security number or similar information to apply for a credit card on the Website. (FAC ¶¶ 63-76, 194.) Moreover, Plaintiff does not (and cannot) plausibly allege that the Meta Pixel collected such information.[10] Accordingly, Plaintiff's breach of implied contract claim should be dismissed because no implied contract exists. *See Shah*, 2025 WL 714252, at *9 (dismissing breach of contract claim because plaintiffs did not "cite where in the contract Defendant agreed to protect their nonpublic personal information").

[10] Plaintiff again misrepresents U.S. Banks Privacy Policy by stating that Meta collects social security numbers from U.S. Bank's Website. As explained in Section III.A.2, the Privacy Policy does not state that.

Second, Plaintiff argues that he has sufficiently alleged damages because he lost the benefit of his bargain, the "compensation" he paid for U.S. Bank's financial services. (Opp. at 27.) Plaintiff's argument is meritless. Other than the single, conclusory reference to "compensation" in paragraph 194, Plaintiff does not suggest anywhere else in the First Amended Complaint that he paid for U.S. Bank's services. His allegation thus has no factual support and should not be taken as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff does not plausibly allege damages, his breach of implied contract claim should be dismissed for this additional reason.

**F. <u>Plaintiff's Unjust Enrichment Claim Should Be Dismissed</u>**

As set forth in the Motion, Plaintiff's unjust enrichment claim is contingent on each of his other claims. (Mot. at 22.) If the Court dismisses Plaintiff's other claims, it must also dismiss the unjust enrichment claim. (*Id.*) Beyond that, Plaintiff's claim fails because (1) there is no cause of action for unjust enrichment in California; (2) it is contingent on Plaintiff's breach of implied contract claim; and (3) Plaintiff has not alleged that U.S. Bank was unjustly enriched at Plaintiff's expense. (*Id.* at 22-23.)

In the Opposition, Plaintiff acknowledges that, under California law, there is no cause of action labeled unjust enrichment, but argues that this is not grounds for dismissal because the Court can treat his unjust enrichment claim as a quasi-contract claim. (Opp. at 28.) Courts, however, regularly dismiss unjust enrichment claims under California law without treating them as a quasi-contract claim. *See Dias v. Spartan Micro, Inc.*, 2022 WL 17216820, at *7 (C.D. Cal. Sept. 14, 2022); *AK Futures v. Limitless Trading Co., LLC*, 2021 WL 5238588, at *6 (C.D. Cal. Oct. 6, 2021); *Walker v. GEICO Gen. Ins. Co.*,

2007 WL 499660, at *5 (E.D. Cal. Feb. 12, 2007). Even if the Court treats Plaintiff's unjust enrichment claim as a quasi-contract claim, it fails for the same reason Plaintiff's breach of implied contract claim fails.

Plaintiff additionally argues that under Minnesota law his unjust enrichment claim is not contingent on his breach of implied contract claim. (Opp. at 29.) Plaintiff, however, misstates the law: "Minnesota law is clear that in order to prevail on a claim of unjust enrichment, a claimant must establish an implied-in-law or quasi contract." *Diversified Water Diversion, Inc. v. Hogenson Props., Ltd.*, 2015 WL 2185201, at *5 (Minn. Ct. App. May 11, 2015) (quotations omitted); *Hollywood Dairy, Inc. v. Timmer*, 411 N.W.2d 258, 260 (Minn. Ct. App. 1987) (same). Plaintiff's unjust enrichment claim thus fails for the same reasons his breach of implied contract claim fails.

Finally, Plaintiff argues, relying on *Group Health Plan*, that it would be "unjust for U.S. Bank to profit from distributing Plaintiff's Social Security number to Meta" and thus his unjust enrichment claim should not be dismissed. (Opp. at 30.) As stated previously, Plaintiff never alleges Meta collected his social security number. Moreover, U.S. Bank's Privacy Policy never states that online tracking technologies, like the Meta Pixel, collect a Website visitor's social security number. Accordingly, Plaintiff's unjust enrichment claim should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, U.S. Bank respectfully requests that the Court grant its Motion to Dismiss without leave to amend.

Date: May 9, 2025

Respectfully submitted,

By: */s/ Jay T. Ramsey*

Todd A. Noteboom (#0240047)
William D. Thomson (#0396743)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 335-1500
todd.noteboom@stinson.com
william.thomson@stinson.com

Jay T. Ramsey (admitted *pro hac vice*)
jramsey@sheppardmullin.com
**SHEPPARD, MULLIN, RICHTER & HAMPTON**
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6017
Telephone: (310) 228-3700